IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: PWG-14-111 |
| CAPITAL ONE FINANCE CORP., *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Plaintiffs Intellectual Ventures have brought two patent infringement lawsuits against Defendants Capital One, first in the Eastern District of Virginia with regard to five patents, and now in this Court, with regard to five other patents.[1] I must decide whether to transfer this case to the Eastern District of Virginia, Alexandria Division where the other case is set for trial in April, as Defendants request, or to retain jurisdiction, as Plaintiffs contend I should do.[2] Given

---

[1] I refer to Defendants Capital One Financial Corporation, Capital One Bank (USA), N.A., and Capital One, N.A. collectively as "Capital One." I refer to Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC collectively as "Intellectual Ventures." The patents at issue in this case (collectively, the "Patents-in-Suit") are United States Patent Nos. 6,819,271 and 7,984,081, to which Intellectual Ventures I holds the rights, and United States Patent Nos. 6,314,409; 6,546,002; and 6,715,084, to which Intellectual Ventures II holds the rights. Compl. ¶ 1, ECF No. 1. I refer to the patents individually by their last three digits, e.g., the '271 Patent.

[2] Defendants' Motion to Transfer Venue to the Eastern District of Virginia has been fully briefed. *See* ECF Nos. 24, 30, & 32. A hearing is not necessary. *See* Loc. R. 105.6. Although Defendants refer to the Eastern District of Virginia and not the Alexandria Division specifically, their Memorandum makes clear that they seek to have this case heard in the Alexandria Division. *See* Defs.' Mem. 10 (stating that inventors in Potomac and Silver Spring, Maryland are within 100 miles of the Eastern District of Virginia, which only is true of the Alexandria Division); *see also id.* at 1–2, 5 (referring to existing case between parties pending in the court to which

the proximity of the courts and the reach of their subpoena powers, the difference between the courts appears negligible in terms of convenience for potential witnesses or the parties, or ease of access to sources of proof. Additionally, although Defendants argue that transfer is in the interest of justice because the Capital One technology that allegedly infringes one of Plaintiffs' patents in this case also allegedly infringes one of Plaintiffs' patents in the Virginia case, where the court already has overseen discovery with regard to this technology, the patents are distinct. More significantly, Defendants' one vague and perfunctory affidavit provides no specificity whatsoever as to the benefits Defendants perceive to transfer. Because Defendants have not produced any evidence of the overlap between the cases or the relevance of the discovery in the other case to the issues in this case, I cannot conclude that transferring the case to the Eastern District of Virginia, Alexandria Division would promote judicial economy and outweigh the other factors that militate toward retaining the case, and therefore I will deny Defendants' Motion.

## I.  BACKGROUND

Plaintiffs, two companies whose "businesses include purchasing important inventions from individual inventors and institutions and then licensing the inventions to those who need them," claim that, "[i]n connection with the[] online banking services and other systems and services" that Defendants "provide[] . . . via electronic means," Defendants "infringe[d] one or more claims of each of the Patents-in-Suit." Compl. ¶¶ 13 & 23. Most relevantly to this motion, Plaintiffs allege that Defendants infringed the '002 Patent "by making, using, providing, offering to sell and/or selling their Mobile Banking and ShareBuilder Applications," *id.* ¶ 47, and "by inducing others to infringe or contributing to the infringement of others, including in this District

---

Defendants seek to have this case transferred). Therefore, I construe their Motion as a motion to transfer to the Alexandria Division. *See* Fed. R. Civ. P. 1.

and elsewhere in the United States," *id.* ¶ 48. Plaintiffs also claim that Defendants infringed the '271 Patent "by making, using, providing, offering to sell and/or selling parallel data decompression and/or compression features and technology, including within IBM Netezza systems," *id.* ¶ 25, and the '081 Patent "by making, using, providing, offering to sell and/or selling database applications capable of processing XML data, including systems running IBM DB2 software," *id.* ¶ 28. They allege that Defendants infringed the '409 Patent "by making, using, providing, offering to sell and/or selling their Credit Card, Debit Card and related Payment Services that use PCI Data Security Standard technology for protecting customer information and account data and their Automated Clearing House ('ACH') services in accordance with NACHA Operating Rules and Guidelines," *id.* ¶ 31, and "by inducing others to infringe or contributing to the infringement of others, including in this District and elsewhere in the United States," *id.* ¶ 32. Additionally, Plaintiffs claim that Defendants infringed the '084 Patent "by making, using, providing, offering to sell and/or selling their Financial Institution Services that use PCI Data Security Standard compliant network intrusion detection and prevention technologies, including networks protected by CheckPoint gateways and/or Cisco ASA or similar intrusion detection implementing technologies," *id.* ¶ 63.

As noted, Plaintiffs previously filed suit against Defendants in the United States District Court for the Eastern District of Virginia, Alexandria Division. *See* Va. Compl., ECF No. 30-1. There, Plaintiffs alleged infringement of five different patents, including the "'382 Patent. Relevantly, they claimed that Defendants infringed the '382 Patent "by making, using, providing, offering to sell and/or selling its shareBUILDER system/service," *id.* ¶ 29, and "by inducing others to infringe or contributing to the infringement of others, including third party users of its shareBUILDER system/service in this judicial district and elsewhere in the United States," *id.*

3

¶ 30. The case is set for trial in the Alexandria Division in April 2014. Defs.' Mem. 1; Pls.' Opp'n 30.

## II. DISCUSSION

A district court may transfer a civil action to another district or division pursuant to 28 U.S.C. § 1404(a), which Congress enacted "'to prevent the waste of time, energy and money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Topiwala v. Wessell*, No. WDQ-11-543, 2012 WL 122411, at *6 n.21 (D. Md. Jan. 12, 2012) (quoting *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994)). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." Whether to transfer is a matter of the district court's discretion. *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984); *Topiwala*, 2012 WL 122411, at *6.

The Court's first consideration is "whether the action could have been brought in the transferee district." *Topiwala*, 2012 WL 122411, at *6. Here, it is undisputed that Plaintiffs could have brought this action in the Eastern District of Virginia. Defs.' Mem. 7; Pls.' Opp'n 10. Therefore, "the Court considers: (1) the weight accorded plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Topiwala*, 2012 WL 122411, at *6 (footnotes omitted). Other relevant considerations include (1) "'relative ease of access to sources of proof'"; (2) "'availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses'"; and (3) "'other practical problems that make a trial easy, expeditious, and inexpensive.'" *Laureate Educ., Inc. v. Megahed*, No. AW-10-749, 2010 WL 2651895, at *10 (D. Md. July 1, 2010) (quoting *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md.

4

2004)). The Court weighs these factors, considering the specific facts of the case to determine whether "the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Topiwala*, 2012 WL 122411, at *6 (quoting *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 632 (E.D. Va. 2006)). Notably, the burden is on Defendants to demonstrate, "by a preponderance of the evidence, . . . that transfer to another forum is proper." *Tse v. Apple Computer*, No. BEL-05-2149, 2006 WL 2583608, at *2 (D. Md. Aug. 31, 2006).

The statute does not indicate how much weight the Court should give to each factor. *See Byerson*, 467 F. Supp. 2d at 632; *Topiwala*, 2012 WL 122411, at *6 n.22. Of import, "[s]ome courts consider convenience the most important factor; others have stated that '[t]he interest of justice may be decisive ... even though the convenience of the parties and witnesses point in a different direction.'" *Topiwala*, 2012 WL 122411, at *6 n.22 (quoting *Byerson*, 467 F. Supp. 2d at 635; citing 15 Wright, Miller & Cooper, § 3854 (collecting cases)). Additionally, a court typically should not transfer a case out of the plaintiff's choice of forum "[u]nless the balance of these factors 'is strongly in favor of the defendant.'" *Id.* (quoting *Collins v. Straight Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (citation omitted)) (footnote omitted).

### A. The Weight Accorded to Plaintiffs' Choice of Venue

A plaintiff's choice of venue typically receives "'substantial weight.'" *Topiwala*, 2012 WL 122411, at *7 (quoting *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002)). The exception is "when the chosen forum is not the plaintiff's home or has little connection to the events giving rise to the litigation." *Id.* Then, the court gives "less weight … to the plaintiff's choice." *Id.* Further, "'[i]n patent infringement actions, "as a general rule, the preferred forum is that which is the *center of gravity* of the accused activity."'" *Tse*, 2006 WL

2583608, at *3 (quoting *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 n.17 (D.N.J. 1993) (quoting *S.C. Johnson & Sons, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983)) (emphasis in original)). This means that the court hearing the case "'"ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its *production*."'" *Id*. (quoting *Ricoh Co.*, 817 F. Supp. at 481 n.17 (quoting *S.C. Johnson*, 571 F. Supp. at 1188) (emphasis in original)). In *Tse*, this Court concluded that California was the "hub of activity" because "[t]he software and products alleged to violate Tse's patent were designed and produced in California," with one exception, which still was not designed or produced in Maryland. *Id.* In so concluding, the Court observed that "[t]he only connection that this case has to Maryland is the fact that Defendants sell their products and digital files to Maryland residents," but, "[a]s Tse recognize[d], Defendants sell their products and files all over the nation," such that the case had "no more connection to Maryland than it [did] to the other forty-nine states." *Id.*

Here, it is undisputed that Maryland is not Plaintiffs' home. Defs.' Mem. 2; Compl. 1. Defendants have not produced any evidence showing the location for design or production of any of their systems that allegedly violate Plaintiffs' patents. *See Tse*, 2006 WL 2583608, at *3. But, they have offered the Affidavit of Jeffrey D. Elgin, who declares that "[a]ll of Capital One's back-end database, server, and security technologies supporting its mobile banking products are housed outside of Maryland and are primarily split between [] Capital One's Virginia-based operations and Texas-based operations," and "the bulk of Capital One's servers are located in Virginia and Texas," although "Capital One does maintain servers in Maryland." Elgin Aff ¶ 8, ECF No. 24-2. This suggests that "the milieu of the infringing device" would be either Virginia or Texas. *See Tse*, 2006 WL 2583608, at *3.

However, according to Plaintiffs, some of the alleged infringement occurred at the hands of Defendants' customers, "thousands of [whom] are located in Maryland," such that Maryland has a connection to the action. Pls.' Opp'n 18; Compl. ¶¶ 32–44, 48–60. Yet, it is undisputed that Defendants' systems are available to customers throughout the United States, Elgin Aff. ¶ 10; Pls.' Opp'n 18–19 & n.13. Indeed Defendants "serve banking customers through branch locations primarily in New York, New Jersey, Texas, Louisiana, Maryland, Virigina and the District of Columbia." Capital One Financial Corp.'s Annual Report to U.S. Securities & Exchange Comm'n 8, Pls.' Opp'n Ex. 7, ECF No. 30-7; *see* Pls.' Opp'n 17 (noting that "Maryland is *one of* Capital One's seven largest markets in the United States") (emphasis added). Given that Plaintiffs have not shown that the alleged infringement was more endemic to Maryland than to Virginia or any of its other primary markets, Plaintiffs' connection to the forum is not enough for this factor to receive "substantial weight." *See Topiwala*, 2012 WL 122411, at *7. Nonetheless, I will give some weight to Plaintiffs' choice of Maryland as its forum for this litigation. *See id.*; *Tse*, 2006 WL 2583608, at *3.

    **B.**    **Convenience to the Parties and the Witnesses and Access to Sources of Proof**

Although the parties devote considerable time to arguing about convenience to the parties and witnesses and access to evidence, little analysis is necessary. The Eastern District of Virginia, Alexandria Division[3] is a neighboring venue with subpoena power over the two

---

[3] Plaintiffs insist that there is "no . . . guarantee" that "the case necessarily would be transferred to the Alexandria division of the Eastern District of Virginia," as "the case could be assigned to either the Richmond or Norfolk divisions, either one of which is far more distant from Capital One's headquarters than is this Court." Pls.' Opp'n 1 n.1. However, this is not an issue, as I can transfer the case to the Alexandria Division. *See, e.g.*, *Reliance Ins. Co. v. Associated Marjon*, No. HAR 90-880, 1990 WL 168798, at *3 (D. Md. Nov. 1, 1990) (granting defendants' motions to transfer specifically to "the United States District Court for the Eastern District of Virginia, Richmond Division"); *John W. Johnson, Inc. v. Atlantic States Constr. Co.*, 276 F. Supp. 379,

witnesses identified in Maryland – two inventors of one of the patents at issue. *See* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."). Likewise, this Court has subpoena power over the Capital One employees who may be called as witnesses. *See id.* Documentary evidence largely is electronic, such that location is immaterial. *See* Pls.' Mem. 24; *Netgear, Inc. v. Ruckus Wireless, Inc.*, No. 10-999, 2011 WL 3236043, at ¶ 14 (D. Del. July 28, 2011) ("In this electronic age, there are no substantial burdens associated with discovery or witness availability that support the need for transfer" as "documents generally are stored, transferred and reviewed electronically."). Moreover, Defendants' single, three-and-a-half-page, ten-paragraph affidavit does not meet Defendants' burden of showing "'by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses.'" *Stratagene*, 315 F. Supp. 2d at 771 (quoting *Helsel v. Tishman Realty Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002)). Indeed, Mr. Elgin, who asserts inconvenience on behalf of Capital One in his affidavit, fails to "'make a particularized showing'" or to provide any details, let alone "sufficient details" with regard to who may testify, what their testimony may be, and how they will be inconvenienced by traveling to Maryland. *See Topiwala*, 2012 WL 122411, at *7 n.28 (noting that "[w]itness convenience . . . cannot be assessed in the absence of reliable information identifying and specifically describing their testimony" because the court needs to be able "to assess the materiality of evidence and the degree of inconvenience") (citation and quotation

---

386 (D. Md. 1967) (conditionally transferring case to "the United States District Court for the Southern District of Georgia, Savannah Division").

marks omitted). In this litigation, neither venue can be said to be more or less convenient than the other.

Yet, Defendants' failure to carry their burden of demonstrating inconvenience is not dispositive of this issue. *See All Risks, Ltd. v. Crump Ins. Servs., Inc.*, No. CCB-10-1554 2011 WL 1304898, at *5 (D. Md. Mar. 31, 2011) (stating that the Court would "assume without deciding that the Northern District of Georgia would be the more convenient venue for parties and witnesses," and then concluding that "[t]ransfer is not warranted, however, because transfer would not be in the interest of justice"). Although Plaintiffs identify cases in which this Court has denied transfer motions to neighboring jurisdictions "based on putative claims of 'inconvenience,'" most of those cases are not controlling because, unlike this case, they did not involve the same parties, the same attorneys, or purportedly overlapping fact patterns that could justify a transfer in the interest of justice. *See Stronghold*, 582 F. Supp. 2d at 729; *Cross*, 383 F. Supp. 2d at 857; *Hurst v. District of Columbia*, No. 12-2537, 2012 WL 5409740, at *3 (D. Md. Nov. 5, 2012). Notably, in one of the cases Plaintiffs cite, *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 33–35 (D.D.C. 2013), the court did not deny the transfer motion solely "due to close proximities," as Plaintiffs suggest, but rather, due to the proximity of the venues, the court gave less weight to the convenience of the parties and witnesses and access to sources of proof in considering the transfer motion. The court denied the motion in "the interests of justice" because it had gained familiarity with the case through discovery and motions practice, and "[that] familiarity would be squandered by a transfer," as discussed in further detail below. *Id.* at 35. Therefore, I turn to the interest of justice.

## C. Interest of Justice

The interest of justice should "'encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties.'" *Topiwala*, 2012 WL 122411, at *7 (footnote omitted) (quoting *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005) (citation and quotation marks omitted)). I must "weigh the impelling need for efficiency in the administration of our court system against the right of [the plaintiff] to continue the trial in a forum [it chose]." *General Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 368 (4th Cir. 1967). For this factor to tip the scale toward transfer, "'the defendant must show by a preponderance of the evidence that the proposed transfer will . . . better promote the interests of justice.'" *Strategene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004) (quoting *Helsel v. Tishman Realty Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002)).

One aspect of this consideration is "[t]he possibility of consolidating the action with a pendent suit in the transferee forum." *Topiwala*, 2012 WL 122411, at *7. Even if consolidation is not possible, if the cases are related, "[t]he interest of justice weighs heavily in favor of transfer . . . because litigation of related claims in the same tribunal may facilitate efficient pretrial proceedings and discovery," as the transferee court already has gained "familiarity with the facts of the case and the applicable law," and "also because it avoids inconsistent results" and "duplicative litigation." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 783–84 (D. Md. 2009); *see General Tire*, 373 F.2d at 368 ("Certainly the simultaneous trial of two suits in different circuits involving a number of identical questions of fact and law would result in a useless waste of judicial time and energy."); *In re Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368, 1368 (U.S. Jud. Pan. Mult. Lit. 2012) ("[T]ransfer pursuant to Section 1404 is available to minimize any possibility of duplicative discovery among these actions.").

*Douglas*, 918 F. Supp. 2d at 34–35, is informative. There, the court noted that "the Court's current involvement in the case" is a "critical factor" that can "carr[y] sufficient weight to offset the other factors." *Id.* The court observed, *id.*:

> Where a Court has gained knowledge and familiarity with the facts, the interests of justice and concerns of efficiency militate in favor of retaining the suit. *See SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1156 (D.C. Cir. 1978) (a court's "familiarity with the allegations, characters, lawyers, and previous history of litigation of th[e] particular case" weighed in favor of denying party's request for transfer) (citing *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619–20 (2d Cir.1968)); *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 31 (D.D.C. 2008) (finding that "th [e] case may be resolved more expeditiously" where "[the] court is already familiar with the facts and legal issues presented"); *Navajo Nation v. Peabody Holding Co., Inc.*, 209 F. Supp. 2d 269, 280 (D.D.C. 2002) (denying motion to transfer in part because case had been pending for significant period, "during which time the Court has considered and resolved a variety of potentially dispositive motions and discovery disputes," thus making the "interests of judicial efficiency" against transfer).

In *Douglas*, after consideration of the other factors, the court found, if anything, "a gentle inclination of the scale toward transfer," but declined to transfer because "the Court ha[d] ruled on a number of substantive motions, dealt with the lawyers on multiple occasions, and helped guide the discovery and class procedures," and "[t]his familiarity would be squandered by a transfer." *Id.*

Conversely, where the transferee forum is familiar with the facts, parties, and attorneys, "the interests of justice and concerns of efficiency militate in favor of [transferring] the suit." *See id.* Here, although the patents at issue in the Virginia case are distinct from the Patents-in-Suit, some overlap still exists between the cases because one of the allegedly infringing technologies is the same. *See* Pls.' Opp'n 9 n.5; Defs.' Mem. 11–12. Specifically, Plaintiffs concede that "[t]he Sharebuilder product is . . . at issue in the Virginia Action" and "also at issue in the case *sub judice*." Plaintiffs view the relevance of Sharebuilder to both cases to be minimal, insisting that it "is the only product" that is at issue in both cases and that "no 'overlap'

or relationship whatsoever exists in the patent Sharebuilder is accused of infringing in the Virginia Action . . . and the patent it is accused of infringing in the present action . . . ." Pls.' Opp'n 9 n.5. Yet, according to Defendants,

> Capital One has expended significant resources collecting and cataloguing documents and providing information and documents to [Intellectual Ventures] on the functionality of ShareBuilder. Thousands of documents related to ShareBuilder have been produced in the Virginia case, and multiple depositions of ShareBuilder witnesses have been taken. [Intellectual Ventures'] expert witnesses have addressed Capital One's ShareBuilder system at length in their infringement and damages reports. The Virginia court already has knowledge of Captial One and the ShareBuilder system, based on various motions and briefs filed in the Virginia case. The parties will likely use a Protective Order in this case that is substantially identical to one already approved by the Virginia court. The same will also likely be true for the parties' agreement on various ESI protocols for document production.

Defs.' Reply 3.

Thus, here, it is the transferee forum that allegedly has spent six months working with these parties and their counsel on the case, overseen discovery, approved and issued a protective order, and learned about the ShareBuilder technology that is at issue in both cases. If this is the case, the same analysis that led the *Douglas* court to retain the case could convince me that I should transfer this case, as the Virginia court's "familiarity would be squandered" if I retained jurisdiction. *See Douglas*, 918 F. Supp. 2d at 35.

Yet I am not convinced that the Virginia court's "prior involvement means that the interests of justice would be clearly served by [transferring] the case" to the Eastern District of Virginia, Alexandria Division. *See id.* The reason I am not convinced is that Defendants have not put forth any evidence whatsoever that these two cases are related. Defendants' one affidavit does not mention the Virginia case or the ShareBuilder technology or address the purported similarities in the litigation. *See* Elgin Aff. Consequently, I have no basis on which to conclude that these cases are related in any significant way, and any such conclusion would be based on

guesswork. Simply put, Defendants have not met their burden. *See Topiwala*, 2012 WL 122411, at *6 n.22. *Tse v. Apple Computer*, No. BEL-05-2149, 2006 WL 2583608, at *2; *Strategene*, 315 F. Supp. 2d at 771; *Helsel*, 198 F. Supp. 2d at 711. Therefore, Defendants' Motion is denied, and this Court will retain jurisdiction.

### III. CONCLUSION

Defendants' Motion is DENIED. A separate order will follow.

Date: <u>March 12, 2014</u>　　　　　　　　　　　　　　　　　　<u>　　　　/S/　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge