

Jeremiah A. Armstrong
jarmstrong@feinday.com
Feinberg Day Alberti & Thompson LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
T: 650.618.4360
F: 650.618.4368

April 13, 2015

**VIA EMAIL**

Special Master Raphael V. Lupo        cc: Counsel of Record
1178 Orlo Drive
McLean, Virginia 22102
rlupoiplaw@gmail.com

      Re:    *Intellectual Ventures I LLC et al. v. Capital One Financial Corporation, et al.*,
             Civil Action No. 8:14-cv-00111 (PWG)

Dear Special Master Lupo:

Per your April 8 request, please find attached Intellectual Ventures' answers to your questions related to the pending summary judgment motions.

Best regards,

*[signature]*

Jeremiah A. Armstrong

# Intellectual Ventures' Response To Special Master's April 8, 2015 Questions

1. **With respect to Capital One's MSJ, is there an illustrative claim for each of the four patents where all asserted claims will stand or fall with the Court's decision on the 35 U.S.C. § 101 ruling. If so, please identify it?**

   The patents-in-suit do not have a representative or illustrative claim.

   Capital One has argued that it has identified representative claims and that IV has not argued that other claims are eligible. But that incorrectly shifts Capital One's heavy burden to IV. Capital One must identify and offer proof why certain claims are abstract. IV need not prove that other claims are eligible if Capital One has not raised them or shown them to be abstract in the first instance.

   The asserted claims of the '409 patent are claims 6, 24, 33, and 36. Claim 6 depends on claim 1, while claims 24, 33 and 36 are independent claims. Each of the asserted claims is of a different scope and must be considered separately. For example, claim 6 is a method for distributing data and requires the active step of openly distributing protected portions of the data, as specific rules that indicate which uses are allowed to access the protected portions of the data. In contrast, claim 24 is a method for accessing data that has been openly distributed. Claim 24 does not include the active step of openly distributing data and does not require the specific rules set forth in claim 6. Claim 33 covers a device for generating an output signal corresponding to data comprising protected data portions and rules defining access rights to the digital data. Claim 33 further includes a specific structural arrangement of components not present in claims 6 and 24, including a means for storing the rules, an access mechanism and a means for generating the output signal. In contrast, claim 36 recites a process control system comprising a device for controlling access to data with a specific structural arrangement of components, which does not require a means for generating the output signal.

   The asserted claims of the '081 patent are claims 21, 22, and 24. Claim 21 is "representative" in that it is the only independent claim at issue. However, the dependent claims involve further limitations on how the claimed dynamic document changes the underlying XML documents.

   The asserted claims of the '002 patent are claims 9, 11, 34, and 37. Claims 11 and 34 are independent claims. Claim 9 depends from claim 1 and claim 37 depends on claim 34. Each asserted claim is of a different scope and must be considered separately. For example, some of the claims involve cellular network technology, while others are not strictly tied to a cellular network. Likewise, claim 11 involves the use of user profile and configuration data, while these terms are not expressly present in the other independent claims.

   The asserted claims of the '084 patent are claims 15, 18, 27, and 32. Claims 15 and 18 are dependent on claim 9, claim 27 is dependent on claim 26, and claim 32 is dependent on claims 26 and 31. In addition to the independent claims that both parties have analyzed in depth, the asserted dependent claims include further subject matter that must be taken into account such as firewalls, adjusting anomaly sensitivity and alarm thresholds and analyzing data packets. The presence of specific additional limitations in each of the dependent claims confirms that a reliance on a representative claim is not appropriate for § 101 analysis.

**2.    Is the invention as claimed (or representative claim) for each patent, directed to an "abstract idea"?**

No. None of the claims of the patents-in-suit are directed to an abstract idea. It is Capital One's burden to prove by clear and convincing evidence that the asserted claims are directed to an "abstract idea," and it has failed to do so.

The Supreme Court has held that the following ideas are abstract: (1) equations and algorithms or (2) longstanding or basic economic or business concepts. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356-57 (2014); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).[1] Recent Federal Circuit decisions have likewise found patents abstract when directed to a long-standing economic or business practice such as "managing a bingo game,"[2] "creating a contractual relationship—a 'transaction performance guaranty,'"[3] "showing an advertisement before delivering free content,"[4] "the basic concept of data recognition and storage,"[5] among other similar ideas.[6]

On the other hand, the Supreme Court has explained an idea is not abstract if it is meaningfully applied. *Diamond v. Diehr*, 450 U.S. 175, 187 (1981). In the realm of computer technology, the Court recently described this as "improv[ing] the functioning of the computer itself…[or] effect[ing] an improvement in any other technology or technical field" and would have been eligible. *Alice*, 134 S. Ct. at 2359. Similarly, a claimed solution "that is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of a" specific technology is eligible as opposed to those that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *DDR*, 773 F.3d at 1257; *see California Inst. of Tech. v. Hughes Commc'ns Inc.*, No. 2:13-CV-07245-MRP, 2014 WL 5661290, at *14 (C.D. Cal. Nov. 3, 2014) ("When claims provide a specific computing solution for a computing problem, these claims should

---

[1] "Here, we note that the '399 patent's asserted claims do not recite a mathematical algorithm. Nor do they recite a fundamental economic or longstanding commercial practice. Although the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet."

[2] *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1007 (Fed. Cir. 2014).

[3] *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

[4] *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)

[5] *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

[6] *See also Accenture Global Servs., v. GmbH Guidewire Software, Inc.*, 728 F.3d 1336, 1338 (Fed. Cir. 2013) (processing an insurance claim); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (managing a stable-value protected life insurance policy); *Dealertrak v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (processing loan information through a clearinghouse); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (broadly claiming all credit card fraud prevention); *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, 558 Fed. Appx. 988 (Fed. Cir. 2014) ("the basic concept of data recognition and storage").

generally be patentable."). The Supreme Court, Federal Circuit and numerous district courts have found computer related patents eligible that improve computer technology in this way.[7]

Using these tests, each of the patents-in-suit does not claim abstract ideas. They provide specific solutions, rooted in technology, to problems arising in specific computer technologies.

'409 patent: The '409 patent solves the technical problem of how to control the secondary distribution of encrypted digital files transferred over a computer network even after the files have been viewed by an authorized recipient. The claims are <u>directed to</u> an access mechanism and rules defining access rights to the data to control each and every access to an encrypted file so that the file (once unencrypted) cannot be further distributed or viewed by an unauthorized recipient. The invention meaningfully improves computer technology by preventing decrypted files from being freely distributed and is rooted in and inextricably tied to computer network technology.

'081 patent: The '081 patent solves the problem of manipulating XML documents of different formats together in an intelligent way and providing a tool that allows a user to modify data originating in those XML documents. Therefore, the claims are <u>directed to</u> using dynamic documents created based on management record types and primary record types. It meaningfully improves technology by allowing users to better access and manage XML documents. There is no "brick and mortar" equivalent because it is directed to XML documents only, XML being a specific and recently developed programming language.

'002 patent: The '002 patent solves a problem of how to access your computer files from any location and any device, no matter what platform hosts those files. The claims are <u>directed to</u> using "pointer data" to be able to access files and data through the novel "mobile interface"

---

[7] *See Diehr*, 450 U.S. at 178 (using a digital computer and database to perform equations that in turn operate a rubber-molding press); *DDR*, 772 F.3d at 1259 (overcoming a problem specifically arising in the realm of computer networks of "retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from the host's website"); *Helios Software, LLC v. SpectorSoft Corp.*, 2014 WL 4796111, at *17 (D. Del. Sept. 25, 2014) (claims directed to "exchanging data over different internet sessions to capture the content of an ongoing Internet communication session" were found eligible); *Smartflash LLC v. Apple Inc.*, 2015 WL 661174, at *8 (E.D. Tex. Feb. 13, 2015) (claims directed to "specific ways of using distinct memories, data types, and use rules" were found eligible); *Hughes*, 2014 WL 5661290, at *15 (claims directed to maintaining the integrity of data over a computer network were found eligible); *Card Verification Solutions, LLC v. Citigroup Inc.*, 2014 WL 4922524, at *4 (N.D. Ill. Sept. 29, 2014) (claims directed to "providing verification information for a transaction securely" were eligible); *Ameritox, Ltd. v. Millennium Health, LLC*, 2015 WL 1272280, at *1 (W.D. Wis. Mar. 19, 2015) (claims directed to improving a drug screening process "that solved a problem that was articulated in the specification itself" were found eligible); *Trading Tech. Int'l, Inc. v. CQG, Inc.*, 2015 WL 774655, at *4 (N.D. Ill. Feb. 24, 2015) ("patents [that] profess to solve problems of prior graphical user interface devices (GUIs), in the context of computerized trading, relating to speed, accuracy and usability" were eligible); *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, 2015 WL 846532, at *9-10 (D. Del. Feb. 24, 2015) (a patent for directing wireless network traffic based on the contents of the data packets was eligible); *Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.*, 2014 WL 7215193, at *9 (D. Del. Dec. 18, 2014) (patent directed to providing an specifically tailored web page interface was eligible); *Modern Telecom Sys. LLC v. Earthlink, Inc.*, 2015 WL 1239992, **2-3 (C.D. Cal. Mar. 17, 2015).

that is accessible from any location or device, no matter what platform hosts the files. It meaningfully improves the functioning of the computer by allowing users to access their files irrespective of the device and affects an improvement in computer network technology by allowing files of various platforms to be accessible remotely from any location. It provides a better way to access and manage files and is inextricably tied with computer technology.

'084 patent: The '084 patent solves the problem of preventing malicious computer attacks by reviewing a broad range of network data. The claims are *directed to* network-based instruction detection techniques that analyze incoming data from "a plurality of hosts, servers, and computer sites in the networked computer system" to detect anomalies and then further using pattern correlation across the various devices in the network to determine whether other devices are anticipated to be affected by the anomaly. It meaningfully affects an improvement in network protection by being able to better detect and prevent threats from any source in near real-time. The invention presents a better way to protect a network and is necessarily rooted in and inextricably tied with computer technology.

3. **If a party's answer is "yes" to question no. 2, identify the "abstract idea" and explain how, if at all, it is involved in the claimed invention.**

As discussed above, the claims are not directed to abstract ideas. And, as set forth in IV's reply brief (Dkt. No. 246 at 10-12) even Capital One's articulation of what it perceives as "abstract ideas" are not abstract.

Capital One has failed to carry its burden to show that the patents are directed to abstract ideas. And, in the process of making its arguments, Capital One trespasses on the fundamental tenet of Supreme Court jurisprudence with respect to § 101:

> [W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law . . . A some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas. . . . . Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. . . . Applications of such concept to a new and useful end, we have said, remain eligible for patent protection.

*Alice*, 134 S. Ct. at 2354-55. Thus, not all ideas are abstract even if they may obliquely touch upon abstract concepts because *all* patents necessarily involve abstract ideas at some level. Here, as set forth in response to question No. 2, the claims are not directed to abstract ideas—they are directed to specific solutions to technological problems that are necessarily rooted in computer technology.

4. **If a party's answer is "yes" to question no. 2, explain how, if at all, the "abstract idea" is "transformed" into an inventive claimed concept.**

Because the asserted claims are not directed to abstract ideas, the Court need not address whether the patents contain an "inventive concept." Regardless, each of the asserted claims contains an inventive concept—*i.e.*, the claimed solution that overcame the specific technological problem as set forth in response to question No. 2. A patent is not directed to an inventive concept when it merely says to take an idea "and apply it with a computer." *Alice*, 134 S. Ct at 2358. However, when "claims recite an invention that is not merely the routine or

conventional use of [technology]" the claims contain an inventive concept. *DDR Holdings*, 773 F.3d at 1259. Here, each claim contains inventive concepts, examples of which are provided below.

'409 patent: The '409 patent claims the inventive concept of an access mechanism and rules defining access rights to the data to control each and every access to an encrypted file so that the file (once unencrypted) cannot be further distributed or viewed by an unauthorized recipient. Claims 6, 24, 33, 36. The routine or conventional use of technology did not allow for continued protection and encryption of digital data even after it had been initially accessed (*i.e.*, unencrypted). Using the '409 patent overrides that conventional use. The asserted claims are directed to a different scope using the access mechanism and rules in different, specific ways. Further, the PTO has repeatedly confirmed the "access mechanism" is novel and nonobvious—a far higher threshold than "conventional."

'081 patent: The '081 patent claims the inventive concept of using "dynamic documents" that are created based on "management record types" and "primary record types." Claim 21. Dynamic documents are used by an interface to allow the user to view the data from multiple different XML documents (irrespective of differing layouts of the individual XML documents) and make changes to the original XML documents through the dynamic documents. The routine or conventional practice would require a user to make changes to the data in each XML document separately instead of through the inventive dynamic document. If one considers that there could be thousands of different XML documents with different layouts, the inventiveness and usefulness of this invention is easily apparent. The dependent claims further provide additional aspects for how the dynamic document is used.

'002 patent: The '002 patent claims the inventive concept of using "pointer data" to be able to access files and data through the novel "mobile interface" that is accessible from any location or device, no matter what platform hosts the files. Claims 9, 11, 34, and 37. As the patent explains, the conventional use of pointers was only to define access to data and information on the local machine. The '002 patent overrides the conventional use of pointers by intelligently accessing and combining them through the mobile interface to allow someone to access all their files and data from any location irrespective of their device. The dependent claims further provide additional aspects for the scope of the embodiment or limits other aspects as described above, further narrowing the scope of the inventions.

'084 patent: The '084 patent claims the inventive concept of reviewing data across a broad base of network traffic from "a plurality of hosts, servers, and computer sites in the networked computer system" to detect anomalies and then further using pattern correlation across the various devices in the network to determine whether other devices are anticipated to be affected by the anomaly. The devices that are anticipated to be affected can then be alerted. This allows for near real-time detection of a computer threat rather than the conventional method of monitoring for specific threats well after they have been identified. As discussed above, the asserted dependent claims include further specific limitations, such as firewalls, adjusting anomaly sensitivity and alarm thresholds and analyzing data packets. The dependent claims further narrow to even more limited embodiments. The conventional method "merely provid[ed] indications of already occurred hacker events and attacks."