UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs/Counter-Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 8:14-cv-00111-PWG |
| CAPITAL ONE FINANCIAL CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants/Counterclaimants/Third-Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTELLECTUAL VENTURES MANAGEMENT, LLC, INVENTION INVESTMENT FUND I, L.P., AND INVENTION INVESTMENT FUND II, LLC | ) | |
| | ) | |
| Third-Party Defendants/Joined Counter-Defendants. | ) | |
| | ) | |

**THIRD PARTY DEFENDANTS' REPLY BRIEF
IN SUPPORT OF MOTION TO DISMISS
CAPITAL ONE'S THIRD-PARTY COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.     CAPITAL ONE'S MARKET DEFINITION IS BARRED BY ISSUE PRECLUSION..................................................................................................... 2

      A.      The Relevant Market Alleged Here Is Identical To The Relevant Market Alleged In The Eastern District Of Virginia........................................................... 3

      B.      The Relevant Market Was Critical and Necessary in Capital One I...................... 9

      C.      The Dismissal Of Capital One's Federal Circuit Cross-Appeal Provides Ultimate Finality ................................................................................................. 11

II.     CAPITAL ONE'S NEW ALLEGATIONS IN ITS OPPOSITION PAPERS DO NOT CURE THE DEFICIENT AGENCY AND ALTER EGO ALLEGATIONS IN THE THIRD PARTY COMPLAINT....................................................................... 12

III.    CAPITAL ONE DOES NOT DISPUTE THAT CLAIM PRECLUSION BARS CLAIM COUNT THREE ................................................................................. 15

IV.    CONCLUSION........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................14

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
  135 S. Ct. 1293 (2015)....................................................................................3, 5, 7

*Berlyn, Inc. v. The Gazette Newspapers, Inc.*,
  157 F. Supp. 2d 609 (D. Md. 2001) ......................................................................8

*Bethesda Ford, Inc. v. Ford Motor Co.*,
  572 F. Supp. 623 (D. Md. 1983) ..........................................................................11

*United States v. Black & Decker Mfg. Co.*,
  430 F. Supp. 729 (D. Md. 1976) ............................................................................9

*Blue Tree Hotel Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
  369 F.3d 212 (2d Cir. 2004)....................................................................................5

*Brooks v. Arthur*,
  626 F.3d 194 (4th Cir. 2010) ..................................................................................4

*Cent. Chem. Corp. v. Agrico Chem. Co.*,
  531 F. Supp. 533 (D. Md. 1982)..............................................................................9

*Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988)..................................................................................13

*Cowen v. Ernest Codelia, P.C.*,
  2001 WL 856606 (S.D.N.Y. July 30, 2001) ..........................................................5

*United States v. E.I. du Pont de Nemours & Co.*,
  353 U.S. 586 (1957)...............................................................................................11

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ..................................................................................8

*United States v. Grinnel Corp.*,
  384 U.S. 563 (1966)...............................................................................................11

*Illinois Tool Works, Inv. v. Independent Ink, Inc.*,
  547 U.S. 28 (2006)...................................................................................................9

*Intellectual Ventures 1 LLC v. Capital One Fin. Corp.*,
  2013 WL 6682981 (E.D. Va. Dec. 18, 2013) (*Capital One I*)........................................ *passim*

*James Talcott, Inc. v. Allahabad Bank, Ltd.*,
  444 F.2d 451 (5th Cir. 1971) ...................................................................................7

*Liberty Mut. Ins. Co. v. FAG Bearings Corp.*,
  335 F.3d 752 (8th Cir. 2003) ...................................................................................7

*In re Microsoft Antitrust Litigation Corp.*,
  355 F.3d 322 (4th Cir. 2004) .................................................................................10

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*,
  311 F. Supp. 2d 1048 (D. Colo. 2004).............................................................13, 14

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979)...............................................................................................11

*United States v. Philadelphia Nat'l Bank*,
  374 U.S. 321 (1963)...............................................................................................11

*Pignons S.A. de Mecanique v. Polaroid Corp.*,
  701 F.2d 1 (1st Cir. 1983)........................................................................................7

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC*,
  713 F.3d 175 (4th Cir. 2013) .................................................................................13

*Spectrum Sports, Inc. v. McQuilan*,
  506 U.S. 447 (1993)...............................................................................................11

*United States v. Stauffer Chemical Co.*,
  464 U.S. 165 (1984).................................................................................................6

*Sutton v. Roth*,
  361 F. App'x 543 (4th Cir. 2010) ....................................................................14, 15

*Vident v. Dentsply Int'l, Inc.*,
  Case No. SA CV 06-1141 PSG, ECF No. 93 (C.D. Cal. June 5, 2008) ..................5

*Zeno v. United States*,
  2009 WL 4910050 (D. Md. Dec. 11, 2009)..........................................................10

**Rules**

Rule 12(b)(6)...................................................................................................................4, 5

Rule 56 ...............................................................................................................................4

Third Party Defendants/Joined Counter-Defendants Intellectual Ventures Management, LLC, Invention Investment Fund I, L.P., and Invention Investment Fund II, LLC (collectively, "Third Party Defendants") respectfully submit this reply memorandum in support of their motion to dismiss Capital One Financial Corporation's, Capital One Bank (USA), N.A.'s, and Capital One, N.A.'s (collectively, "Capital One") Third Party Complaint.  Capital One cannot state claims for antitrust violations because the alleged relevant market in this action is identical to the market previously rejected by the Eastern District of Virginia.  *Intellectual Ventures 1 LLC v. Capital One Fin. Corp.*, No. 1:13-CV-00740 AJT, 2013 WL 6682981, at *5 (E.D. Va. Dec. 18, 2013) (*Capital One I*) (determining the alleged market was "not a 'relevant market' under any recognized antitrust jurisprudence").  Issue preclusion bars Capital One from relitigating the market issue because Capital One did not identify any difference between the relevant market alleged here and the one previously litigated to final judgment and beyond.  Capital One's recitation of so-called "new facts" does not alter the proposed relevant market or serve to revive an issue already conclusively resolved.

Capital One's third claim for violation of Section 7 of the Clayton Act is barred by claim preclusion.  Capital One makes no argument to the contrary.  Capital One asserted a claim for violation of Section 7 in the Eastern District of Virginia, and the claim was dismissed with prejudice.  To assert a new, different, and viable Section 7 claim, Capital One would have to allege relevant events that occurred after Capital One filed its Eastern District of Virginia counterclaims.  But the Section 7 counterclaim made in this case is not tethered to the acquisition of new patents since the filing of the original counterclaim.  Capital One merely attempts to revive a claim that has been adjudicated by claiming that it has new facts that make the adjudicated claim look better.  That is not enough.  A frivolously asserted, unsubstantiated, or

simply weak claim is no more entitled to resurrection than a fully documented, but failed claim. The question that must be answered under the law is whether the same cause of action is asserted, not whether the claimant has done a better or purportedly better job of documenting the claim. Without the allegation of asset acquisitions other than those that were the subject of the adjudication in the Eastern District of Virginia, Capital One cannot allege a Section 7 claim.

Finally, Capital One's attempt to overcome the failure of its agency and alter ego pleading with argument in its opposition brief must be rejected. It is well-settled that the Court's consideration of the adequacy of Capital One's pleading is limited to the pleaded allegations, not new matter asserted in a brief. If Capital One believes there are facts it can add to its counterclaim, it should seek permission to add them, but the Court should reject Capital One's attempt to further develop its agency and alter ego allegations with alleged facts and arguments that do not appear in the counterclaim.

## I.   CAPITAL ONE'S MARKET DEFINITION IS BARRED BY ISSUE PRECLUSION.

Capital One contends that the Third Party Defendants' issue preclusion argument fails because the Third Party Defendants cannot establish that (1) the issue to be precluded is "identical" to the one previously litigated; and (2) the issue was "critical and necessary" to the judgment in the prior proceeding. *See* ECF No. 305 at 5. Capital One is wrong on both counts. The relevant market identified in this case is identical to the failed market Capital One asserted in the Eastern District of Virginia. *See Capital One I*, 2013 WL 6682981, at *5 ("Capital One's proposed technology market equates to IV's 'portfolio of 3,500 or more patents that [IV] alleges cover widely used financial and retail banking services' in the United States because IV's patent portfolio presents an 'inescapable threat' to providers of financial services."). Capital One cannot escape the preclusive effect of the adverse adjudication in Virginia by simply rephrasing

the market description or reciting immaterial "new facts." *See B & B Hardware, Inc. v. Hargis Indus., Inc*., 135 S. Ct. 1293, 1308 (2015).  Similarly, Capital One cannot avoid the preclusive effect of the judgment in the Eastern District of Virginia because the presence of more than one determinative issue is no bar to the application of issue preclusion.

A.     **The Relevant Market Alleged Here Is Identical To The Relevant Market Alleged In The Eastern District Of Virginia.**

Capital One wrongly contends that it "alleged a *different market* in its EDVA pleading," and that "[n]owhere in that pleading did Capital One allege that 'IV's financial-services portfolio in the United States constitutes a relevant licensing market,' as it does here."  ECF No. 305 at 9 (emphasis in original); 2 n.1.  This stunning argument has no merit.

The Eastern District of Virginia stated that "Capital One's proposed technology market equates to IV's 'portfolio of 3,500 or more patents that [IV] alleges cover widely used financial and retail banking services' in the United States because IV's patent portfolio presents an 'inescapable threat' to providers of financial services."  *See Capital One I*, 2013 WL 6682981, at *5 (citing Capital One's Answer and First Amended Counterclaims at 30 ¶¶ 71-72).  There are no differences between the market rejected in the Eastern District of Virginia and the market alleged in this Court.[1]

While Capital One argues that the markets in the two cases are "different," Capital One provides no explanation or elaboration about *how* the markets differ.  Instead of supporting that

---

[1] To the extent Capital One draws a distinction between a "technology market" and a "licensing market," no such distinction exists.  *See* U.S. Dep't of Justice and Federal Trade Comm'n, Antitrust Guidelines for the Licensing of Intellectual Property (Apr. 6, 1995) [hereinafter Antitrust Guidelines], *available at* http://www.justice.gov/atr/public/guidelines/0558.pdf, at 8 ("Technology markets consist of the intellectual property that is licensed (the 'licensed technology') and its close substitutes—that is, the technologies or goods that are close enough substitutes significantly to constrain the exercise of market power with respect to the intellectual property that is licensed.  When rights to intellectual property are marketed separately from the products in which they are used, the Agencies may rely on technology markets to analyze the competitive effects of a licensing arrangement.").

contention, Capital One tries to misdirect attention from the deficiency of its argument by inappropriately attacking the evidence that supports the conclusion that the two markets are identical.  For instance, Capital One argues that the Third Party Defendants cannot "rely on Capital One's comments in oral argument before the EDVA," because "statements by counsel that raise new facts constitute matters beyond the pleading cannot be considered on a Rule 12(b)(6) motion."  ECF No. 305 at 9-10 (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011)).  Capital One's counsel's comments did not present "new facts."  Capital One's counsel's statements *confirmed* the Court's understanding of Capital One's proposed relevant market.  *See* ECF No. 296-4 at 33:15-34:1 ("THE COURT: You're saying the 3,500 patents that are owned by Intellectual Ventures constitutes 100 percent of the patents involved in the ex post market for technology enabling—for patents pertaining to technology enabling business processes.  MR. MOORE: And that's because of the antitrust law."); *see also* ECF No. 296-3 at 68 ("Capital One further pointed out that its allegations supported a distinct market (sometimes called a 'submarket') limited to IV's portfolio because IV alleged that its portfolio license is indispensable to commercial banking.").  Counsel's statements also confirm that the relevant market alleged in *Capital One I* is identical to the market alleged here.

Capital One apparently fails to recognize that the Court's consideration of the issue preclusion foundation of the Third Party Defendants' motion is not subject to the Rule 12(b)(6) limitations on evidence.  A district court presented with an issue preclusion argument is required to consider all of the evidence relevant to the contentions of the parties, without regard to whether it appears on the face of a pleading or requires fact finding that would not be allowed under Rule 56.  *Brooks v. Arthur*, 626 F.3d 194, 199 n.6 (4th Cir. 2010) (noting that "[w]hen

entertaining a motion to dismiss on the ground of res judicata or collateral estoppel, a court may judicially notice facts from a prior judicial proceeding." (quoting *Briggs v. Newberry Cnty. Sch. Dist.*, 838 F. Supp. 232, 234 (D.S.C. 1992))); *Cowen v. Ernest Codelia, P.C.*, No. 98 Civ. 5548, 2001 WL 856606, at *1 (S.D.N.Y. July 30, 2001) (acknowledging that "it is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation"); *see Blue Tree Hotel Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (stating that courts "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss").  There is no reason why this Court may not, in connection with this motion, consider all of the information that is relevant to the question of whether the elements of issue preclusion are satisfied, just as it would have if the Third Party Defendants filed a separate motion seeking the application of issue preclusion.  *See e.g.*, *Vident v. Dentsply Int'l, Inc.*, Case No. SA CV 06-1141 PSG (ANx), ECF No. 93 (C.D. Cal. June 5, 2008) (granting motion for application of collateral estoppel).

Once it is determined that the elements of issue preclusion are satisfied, the scope of the allegations Capital One may make is narrowed.  Specifically, Capital One's relevant market allegation is foreclosed, and an essential element of its claims is absent.  When the Court applies Rule 12(b)(6), it is not required to ignore the fact that Capital One is precluded from relitigating the market allegation on which it failed in the Eastern District of Virginia and declined to subject to Federal Circuit scrutiny.

Trivial variations in the words used by Capital One to describe the purported relevant market in this case do not create a market different from the market alleged in *Capital One I*. *See B & B Hardware*, 135 S. Ct. at 1308 (noting that "[m]ateriality, of course, is essential— trivial variations between the usages set out in an application and the use of a mark in the

marketplace do not create different 'issues'"); *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 172 (1984) (applying defensive use of collateral estoppel where a party sought to "litigate twice . . . an issue arising . . . from virtually identical facts" because the "factual differences" were "of no legal significance").

Capital One contends that the relevant markets are not identical because in this litigation, "Capital One alleged *different and new facts.*"  ECF No. 305 at 5-6 (emphasis in original).  The "new facts" Capital One identifies have no bearing on the legal or factual sufficiency of the alleged relevant market.  *See Stauffer Chemical Co.*, 464 U.S. at 172.  None of the "new facts" would justify a conclusion that the relevant market alleged in this case—"IV's financial-services portfolio of 3,500 patents"—is not identical to the market alleged in *Capital One I.  See Capital One I*, 2013 WL 6682981, at *5.

For example, Capital One states that certain patents at issue in *Capital One I* were found invalid.  ECF No. 305 at 7.  But Capital One offers no explanation how a finding on the validity of certain asserted patents has any bearing on the scope or legal or factual sufficiency of the alleged relevant market.  Similarly, the documentary evidence cited by Capital One in no way draws a distinction between the market alleged here and the market previously adjudicated.  *See id.* ("IV's top executives boast that their targets 'can not avoid' IV's portfolio;" "IV builds a portfolio 'that will compel specific big fish . . . to take a license;" "THE UNEQUALLED BREADTH OF OUR RAPIDLY GROWING PORTFOLIO.'") (emphasis in original).  How is a boastful statement that "targets 'can not avoid' IV's portfolio" any different from the contention that the "portfolio presents an 'inescapable threat' to providers of financial services?"  *See Capital One I*, 2013 WL 6682981, at *5.  What difference does it make in the determination of

whether a proper relevant market is alleged?  Capital One does not say.  The "new facts" identified by Capital One in no way alter the relevant market allegations.

The Supreme Court has "long recognized that 'the determination of a question directly involved in one action is conclusive as to that question in a second suit.'"  *B&B Hardware*, 135 S. Ct. at 1302 (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 354 (1877)).  The law does not permit do-overs, such as what Capital One seeks in this case.  Claims of new or better evidence do not justify a second opportunity to litigate an identical issue.  *See Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 2 (1st Cir. 1983) (noting that "[o]nce a plaintiff has had a chance to prove a fact, he cannot reopen the matter simply by stating that he wishes to introduce more or better evidence"); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 463 (5th Cir. 1971) (recognizing that when a court considers applying collateral estoppel "there is always a lingering question whether the party might have succeeded in proving his point if he had only been given a second chance at producing evidence.  Without more, however, this question is not sufficient to outweigh the extremely important policy underlying the doctrine of collateral estoppel—that litigation of issues at some point must come to an end."); *see also Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 763 (8th Cir. 2003) (identifying that "most courts require more to avoid issue preclusion than simply an assertion that the previous decision was wrong").

Finally, Capital One incorrectly argues that the court in the Eastern District of Virginia rejected the alleged relevant market "because it did not contain all available substitutes" and that "[o]nly when the EDVA had found that the market as alleged was implausible did it consider a technology market equating to IV's portfolio, which Capital One had *never pleaded*."[2]  ECF No.

---

[2] Despite arguing that the relevant market here is different from the relevant market in the Eastern District of Virginia, Capital One appears to concede that the Eastern District of Virginia evaluated "a technology market equating to IV's portfolio"—the same market alleged in this

305 at 2 n.1 (emphasis in original).  It is plainly not true that Capital One never pleaded a

relevant market equating to "IV's portfolio."  *Capital One I*, 2013 WL 6682981, at *5.

Moreover, the Eastern District of Virginia rejected Capital One's alleged relevant market

because it did not contain "any of the recognized indicia of a relevant market."  *Id*.  The Court

specifically found that Capital One could not allege that there are no substitutes in the market

because "the actual technologies included within the proposed market, within broad limits,

appear nearly irrelevant, since it is not the substantive, commercial usefulness or the merits of

the technology that defines the market; but simply the patents in the market used to threaten

Capital One, which consists entirely of IV's patent portfolio.  Only in that sense are there no

'substitutes . . . .'"  *Id*.  Once again, "that sense" is not good enough.  Capital One cannot allege

the absence of available substitutes because Capital One makes no factual allegations regarding

any technology claimed in the patents that make up the portfolio, and focuses solely on the

ownership of the patents.  *See* ECF No. 228 ¶ 49 (alleging "there are no substitutes for a license

to IV's portfolio, because IV removed the original patentees from the market . . . .").  The alleged

markets in this case and the Eastern District of Virginia lawsuit are identical.[3]

---

case.  As the Third Party Defendants explained in their moving papers, the Eastern District of
Virginia's determination of the nature of the market alleged is not subject to collateral attack.
The court determined the market that was alleged, and held that market to be legally insufficient.
Capital One is barred from relitigating both aspects of the court's decision.  Capital One's
remedy for any error in the assessment of its market allegation was an appeal to the Federal
Circuit, which Capital One decided to forego, after briefing was completed.

[3]  The argument that there are no "substitutes" for the patents alleged to comprise the relevant
market because they are owned by the plaintiffs and therefore cannot be obtained elsewhere
reflects a basic failure to understand what a "substitute" is, and a failure to understand the legal
rules that drive market definition.  *See E.I. du Pont de Nemours*, 637 F.3d at 441 ("The market
definition has two components the relevant product market and the relevant geographic
market.");  *Berlyn, Inc. v. The Gazette Newspapers, Inc.*, 157 F. Supp. 2d 609, 616 (D. Md. 2001)
("The product market identifies the products that compete with each other, as defined by 'the
reasonable interchangeability of use or the cross-elasticity of demand between the product itself
and substitutes for it.'" (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)));

## B.      The Relevant Market Was Critical and Necessary in *Capital One I*.

Capital One wrongly contends that its claims are not barred by issue preclusion because

"the EDVA's market definition holding was *one* of *several* alternative reasons why the EDVA

dismissed."  ECF No. 305 at 8 (emphasis in original).  According to Capital One's theory,

because its claims were held so severely deficient that dismissal was independently supported by

multiple grounds, issue preclusion cannot be applied to any.  Capital One's argument that issues

---

*Cent. Chem. Corp. v. Agrico Chem. Co.*, 531 F. Supp. 533, 549 (D. Md. 1982) (noting that "a relevant market is one in which a product effectively competes with functionally equivalent products"); *United States v. Black & Decker Mfg. Co.*, 430 F. Supp. 729, 737 (D. Md. 1976) ("In defining the product market, the court 'must recognize meaningful competition where it is found to exist.'" (quoting *United States v. Continental Can Co.*, 378 U.S. 441, 449 (1964))); Antitrust Guidelines at 8 ("Technology markets consist of the intellectual property that is licensed (the 'licensed technology') and its close substitutes—that is, the technologies or goods that are close enough substitutes significantly to constrain the exercise of market power with respect to the intellectual property that is licensed.")

There is never a "substitute" for a patent (or group of patents) in the sense that only the patent owner owns it or them and only the patent owner can sell it or them.  The same is true of all property, but an item of property does not define a market simply because it cannot be sold by anyone other than its owner.  The Supreme Court and the federal enforcement agencies recognize that intellectual property is not generally different from other types of property for this or other purposes.  *See Illinois Tool Works, Inv. v. Independent Ink, Inc.*, 547 U.S. 28, 45 (2006); Antitrust Guidelines at 3 ("The Agencies apply the same general antitrust principles to conduct involving intellectual property that they apply to conduct involving any other form of tangible or intangible property."); *id.* at 4 ("Although the intellectual property right confers the power to exclude with respect to the *specific* product, process, or work in question, there will often be sufficient actual or potential close substitutes for such product, process, or work to prevent the exercise of market power.").

Suppose Capital One owns a patent that claims a method of check processing.  The patent presumably does not comprise a market because there are "substitutes" for the claimed method. It is not true that there are no "substitutes," in a relevant antitrust sense, because the patent can only be licensed from Capital One.

Nothing would change in this regard if Capital One also owned 3,500 other patents that it, or someone else, labeled the Capital One Portfolio, regardless of how the Capital One Portfolio came to be owned by Capital One.  Patents covering check processing, window washing, secure collection of cash from automated teller machines, or identification of potential customers for direct mail solicitation are not substitutes for each other (and thus are not a part of the same relevant market), and they would not be transformed into "substitutes" or part of the same market simply because they were acquired by Capital One.  Nor could it sensibly be said that there is no "substitute" for the Capital One Portfolio simply because Capital One is the owner of the Capital One Portfolio.

that sink a claim that fails on multiple grounds may be relitigated, while issues that provide the

sole basis on which a claim fails may not is incorrect.  There is no relevant rule favoring parties

asserting profoundly failed claims over those asserting more narrowly deficient claims.

Capital One misconstrues the law of the Fourth Circuit on the requirement that the issue

for which preclusion is sought was "critical and necessary," and it does not address the

differences between offensive and defensive issue preclusion as to that requirement.  While in

some cases it may be difficult to determine with precision whether issue preclusion is

"offensive" or "defensive," there is no doubt here that the Third-Party Defendants seek defensive

issue preclusion.  *See In re Microsoft Antitrust Litigation Corp.*, 355 F.3d 322, 326 (4th Cir.

2004) ("[W]hen a *defendant* employs the doctrine [of issue preclusion] 'to prevent a plaintiff

from asserting a claim the plaintiff has previously litigated and lost against another defendant,' it

is known as 'defensive collateral estoppel.'") (internal citations omitted) (emphasis in original).

It is appropriate to bar relitigation of issues under defensive issue preclusion even where more

than one issue independently supports a prior judgment.  *See Zeno v. United States*, No. CIV. A.

DKC 09-0544, 2009 WL 4910050, at *8 (D. Md. Dec. 11, 2009) (stating that "the Fourth Circuit

has applied defensive collateral estoppel to bar issues in a case where two issues were previously

decided and where both of the issues could have independently supported the result") (citing

*Ritter v. Mount St. Mary's College*, 814 F.2d 986 (4th Cir. 1987)).

Capital One ignores this distinction and the cases on which Capital One relies only

involve the application of *offensive* collateral estoppel.  *See* ECF No. 305 at 8-9 (citing *In re*

*Microsoft Corp. Antitrust Litig.*, 355 F.3d at 328 (offensive collateral estoppel); *Tuttle v.*

*Arlington Cnty. Sch. Bd.*, 195 F.3d 698, 703-04 (4th Cir. 1999) (offensive collateral estoppel);

*C.B. Marchant Co., Inc. v. E. Foods, Inc.*, 756 F.2d 317, 319 (4th Cir. 1985) ("[I]t cannot be said

that all the elements necessary to invoke the doctrine of offensive collateral estoppel exist.")).

Capital One provides no support for treating offensive and defensive issue preclusion the same in

this case.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979).

The Eastern District of Virginia's determination that Capital One's proposed relevant

market was "not a 'relevant market' under any recognized antitrust jurisprudence" was critical

and necessary to the dismissal of Capital One's antitrust claims.  *Capital One I*, 2013 WL

6682981, at *5; *see also Bethesda Ford, Inc. v. Ford Motor Co.*, 572 F. Supp. 623, 632 (D. Md.

1983) (stating that an issue is critical and necessary if "the issue was actually recognized by the

parties as important and by the trier as necessary to the first judgment") (internal citation

omitted).  Capital One is required to allege a cognizable relevant market to state plausible

antitrust claims.  *See Spectrum Sports, Inc. v. McQuilan*, 506 U.S. 447, 449 (1993); *United States

v. Grinnel Corp.*, 384 U.S. 563, 570-71 (1966); *United States v. Philadelphia Nat'l Bank*, 374

U.S. 321, 362 (1963); *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 593

(1957).  Because Capital One is barred from relitigating the issue of whether the alleged relevant

market on which its claims depend is legally sufficient, Capital One cannot state Section 2 or

Section 7 claims in this case.

### C.    The Dismissal Of Capital One's Federal Circuit Cross-Appeal Provides Ultimate Finality.

Capital One strangely contends that "IV tries to attach significance to the Federal

Circuit's order" dismissing Capital One's cross-appeal of the Eastern District of Virginia's

Judgment and that the Third Party Defendants are using "the Federal Circuit's dismissal to tee up

yet another res judicata argument."  ECF No. 305 at 10-11.  That puzzling comment is

explainable only by Capital One's desperate and ironic attempt to characterize every argument

made by the Third Party Defendants as re-argument or an attempt at reconsideration.  As set

forth in the memorandum in support of this motion, the Third Party Defendants cited the Federal Circuit's dismissal of Capital One's cross-appeal (requested by Capital One) for two reasons. First, the dismissal leaves no doubt that the Third Party Defendants have satisfied an element of issue preclusion—the finality requirement. *See* ECF No. 296-1 at 15 ("After the court dismissed Capital One's antitrust counterclaims, Capital One filed a cross-appeal in which it attempted to establish the legal sufficiency of its market definition.  On April 7, 2015, at Capital One's request, the Federal Circuit dismissed Capital One's cross-appeal.  Consequently, the district court's decision in *Capital One I* is final in an ultimate sense.") (internal citation omitted). Regardless of whether there is room for debate on the question of "finality" issues in other contexts, the finality requirement is satisfied for issue preclusion purposes when ultimate finality has been achieved.

The other reason for citation of the dismissal of the appeal was to make it clear that Capital One knowingly decided to encounter the issue preclusion bar it now faces.  When Capital One asked for dismissal of its appeal, the opposing parties specifically pointed out that issue preclusion would be a consequence of dismissal.  Faced with the choice of Federal Court scrutiny of its claims or arguing about issue preclusion, Capital One decided to forego the option it knew would result in failure in favor of the insubstantial arguments it has presented in opposition to the Third Party Defendants' motion.

## II.   CAPITAL ONE'S NEW ALLEGATIONS IN ITS OPPOSITION PAPERS DO NOT CURE THE DEFICIENT AGENCY AND ALTER EGO ALLEGATIONS IN THE THIRD PARTY COMPLAINT.

Capital One did not plead any facts sufficient to support a conclusion that the activities of the separate Third Party Defendants may plausibly be combined to establish the existence of a single "financial services portfolio" held and asserted by a single monopolizing entity.  Capital One asserts in response to the Third Party Defendants' motion that "[i]t is IV that proclaimed the

existence of a single banking-technology portfolio" and that "[n]ever once did IV suggest that distinct entities within IV offer different portfolios for banking technology, or imply that the IV network acts as anything other than a single entity."  ECF No. 305 at 12.  Capital One's arguments do not move the ball because nothing Capital One argues in opposition to this motion can overcome deficiencies in the challenged pleading.  *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (noting that "parties cannot amend their complaints through briefing"); *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (noting that theories set forth in an opposition brief are not a substitute for specificity of allegations in an antitrust complaint and that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (internal citation  omitted).  The sufficiency of the agency and alter ego allegations turns on what Capital One alleged in the Third Party Complaint, not the arguments it makes in opposing this motion.

Capital One also wrongly contends that it need not allege that each Third Party Defendant is an agent or alter ego of every other so long as "the IV entity with control over IV's financial services patent acquisitions, portfolio, and assertion is before the Court."  ECF No. 305 at 13 (citing *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1070 (D. Colo. 2004)).  But even the authority that Capital One cites provides no support for that position.  The *Nobody* court found that the plaintiff in that case "sufficiently pled facts" that show that a subsidiary is the alter ego of its parent.  311 F. Supp. 2d at 1073.  No such factual allegations are found in Capital One's Third Party Complaint.[4]

---

[4] Capital One's conclusory allegations that "Intellectual Ventures Management, LLC controls all IV entities" (ECF No. 228 ¶ 12) or that "IV I and IV II acted, as always, as mere vessels for Intellectual Ventures Management, LLC, IIF1, and IIF1" (*Id.* ¶ 13) or that "IV 1, IV II,

As Capital One has acknowledged, "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy."  ECF No. 305 at 10 (quoting *S. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 184).  Yet Capital One contends that the allegations in paragraphs 11 and 13 of its Third Party Complaint "surpass the pleading requirements for agency and alter ego" even though those allegations are directed at "the IV entities that are the Plaintiffs in this case"—Intellectual Ventures I LLC and Intellectual Ventures II LLC.  ECF No. 305 at 13 (citing ECF No. 228 ¶ 11, 13).  The allegations on which Capital One relies are not directed to the Third Party Defendants.  In fact, Capital One's reliance on the testimony of "IV's own CEO," in paragraphs 11 and 13 of the complaint, merely supports an allegation that refers only to "IV I" and "Intellectual Ventures I."  ECF No. 228 ¶¶ 11 ("The CEO of Intellectual Ventures, Nathan Myhrvold, testified in deposition that IV I . . ."); 13 ("Illustratively, Intellectual Ventures' CEO testified that 'Intellectual Ventures I . . .'").

Nowhere in the Third Party Complaint does Capital One allege facts to justify combining the respective patent portfolios held by the Plaintiffs with those allegedly held by the Third Party Defendants for the purpose of declaring a monopoly.  Capital One's contention that "agency and alter ego issues are fact-intensive questions going to corporate structures, on which discovery is required before dismissal" is simply wrong.  ECF No. 305 at 14 (citing *Sutton v. Roth*, 361 F. App'x 543, 548-50 (4th Cir. 2010)).  The authority Capital One cites provides no support for its position.  *Sutton* is an unpublished opinion that is not binding precedent in this circuit.  *Sutton*,

---

Intellectual Ventures Management, LLC, IIF1, and IIF2 are alter egos of one another" (*Id.*) are insufficient, in any event.  Capital One is required to allege facts demonstrating control and facts demonstrating that the Plaintiffs acted as mere vessels for the Third Party Defendants, if those are the bases on which it seeks to justify its counterclaims.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009) (citing *Bell Atlantic Corp. v. Twombly*, U.S. 554, 555 (2006)).

361 F. App'x 543 at 544.  More importantly, the case was decided narrowly on nuanced facts not applicable here, and it deals with summary judgment, not a motion to dismiss.  *Id.* at 549-50.

## III.    CAPITAL ONE DOES NOT DISPUTE THAT CLAIM PRECLUSION BARS CLAIM COUNT THREE.

Capital One raises no argument in response to the Third Party Defendants' assertion that Capital One's Section 7 claim is barred by claim preclusion.  As the Third Party Defendants established in their opening memorandum, Capital One does not premise its new Section 7 claim on acquisitions made after the filing of its counterclaims in the Eastern District of Virginia.  *See* ECF No. 296-1 at 17-19.  Only a claim based on patents acquired after October 13, 2013 could avoid the preclusive effect of the Eastern District of Virginia's judgment.  There are no allegations to that effect.

## IV.    CONCLUSION.

For the foregoing reasons, the Third Party Defendants respectfully request that the Court grant their motion to dismiss Capital One's Third Party Complaint.

Respectfully submitted,

Of Counsel:

Ian N. Feinberg (*Pro hac vice*)
ifeinberg@feinday.com
Margaret Elizabeth Day (*Pro hac vice*)
eday@feinday.com
David L. Alberti (*Pro hac vice*)
dalberti@feinday.com
Clayton Thompson
cthompson@feinday.com
Marc Belloli (*Pro hac vice*)
mbelloli@feinday.com
Yakov Zolotorev (*Pro hac vice*)
yzolotorev@feinday.com

*/s/Robert E. Freitas*
Robert E. Freitas (*Pro hac vice*)
rfreitas@fawlaw.com
Daniel J. Weinberg (*Pro hac vice*)
dweinberg@fawlaw.com
Rachel B. Kinney (*Pro hac vice*)
rkinney@fawlaw.com

FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, CA  94065
Telephone: (650) 593-6300
Facsimile:  (650) 593-6301

Sal Lim (*Pro hac vice*)
slim@feinday.com
Jeremiah A. Armstrong (*Pro hac vice*)
jarmstrong@feinday.com

FEINBERG DAY ALBERTI &
THOMPSON LLP
1600 El Camino Real, Suite 280
Menlo Park, California 94025
Telephone:  (650) 618-4360
Facsimile:   (650) 618-4368

Michael E. McCabe, Jr.
D. Md. Bar No. 10693
mmccabe@fblaw.com
Bryan D. Bolton
D. Md. Bar No. 02112
bbolton@fblaw.com

FUNK & BOLTON, P.A.
Twelfth Floor
36 South Charles Street
Baltimore, Maryland  21201-3111
Telephone: (410) 659-7700
Facsimile:  (410) 659-7773

*Attorneys for Third Party Defendants*
Intellectual Ventures Management, LLC;
Invention Investment Fund I, L.P.; and
Invention Investment Fund II, LLC

Dated:  June 12, 2015