**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **INTELLECTUAL VENTURES I LLC,** | | |
| *et al.*, | * | |
| | | |
| **Plaintiffs/Counter-Defendants,** | * | **Case No.: PWG-14-111** |
| | | |
| **v.** | * | |
| | | |
| **CAPITAL ONE FINANCIAL CORP.,** | * | |
| *et al.*, | | |
| | * | |
| **Defendants/Counterclaimants/** | | |
| **Third Party Plaintiffs,** | * | |
| | | |
| **v.** | * | |
| | | |
| **INTELLECTUAL VENTURES** | * | |
| **MANAGEMENT, LLC,** *et al.*, | | |
| | * | |
| **Third Party Defendants.** | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION AND ORDER**

Counterclaimants Capital One Financial Corp., Capital One Bank (USA), N.A., and Capital One, N.A. (collectively, "Capital One companies") lodged three antitrust counterclaims in this patent litigation, alleging that Plaintiffs/Counter-Defendants Intellectual Ventures I LLC and Intellectual Ventures II LLC (together, "original IV companies"), along with Intellectual Ventures Management, LLC, Invention Investment Fund I, L.P., and Invention Investment Fund II, LLC (collectively, "new IV companies") have amassed monopoly power in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 7 of the Clayton Act, 15 U.S.C. § 18. ECF No. 107 (Third Amended Counterclaim); *see* ECF No. 196 (public redacted version). They also filed a Third-Party Complaint against the new IV companies (referred to, collectively with

the original IV companies, as "Intellectual Ventures companies"). ECF No. 228.  The Third-Party Complaint includes the same three antitrust claims that the Capital One companies presented as counterclaims, with small but, as discussed below, significant additions.  *Id.*

The original IV companies filed a Motion to Dismiss the counterclaims, and I denied the motion.  July 1, 2015 Mem. Op. & Order, ECF No. 328.  In doing so, I noted that, while largely reiterating their opposition to the Capital One companies' earlier motion to amend to add the antitrust counterclaims, the original IV companies raised one new argument in their motion to dismiss.  Insisting that they "are separate legal entities," and that the Capital One companies' allegations of agency and alter ego are "conclusory," insufficient, and should be stricken, the original IV companies contended that the Capital One companies could not "establish the existence of a single 3,500 patent portfolio," that is, a monopoly, for purposes of stating an antitrust claim.  Counter-Defs.' Mem. 9–10.  The Capital One companies responded that the original IV companies' new argument "makes no sense" because "'IV use[s] its 2,000 shell companies to fraudulently conceal its acquisition and ownership of the vast majority of patents in its financial-services portfolio."  Countercls.' Opp'n 5 (quoting Third Am. Countercl. ¶ 216), but they failed to explain the basis for their reference to the original IV companies as one entity.

I ordered the Capital One companies to brief the issue of whether the original IV companies "are separate companies with separate portfolios" and permitted the original IV companies to file a reply, and the motion to strike incorporated in the original IV companies' motion to dismiss remained pending.  July 1, 2015 Mem. Op. & Order 3–4.  It is now ripe for resolution.  *See* ECF Nos. 225 (Counter-Defs.' Mot.), 340 (Countercls.' Br.), 362 (Counter-Defs.' Br.), 394 (Counter-Defs.' Supp.), 397 (Countercls.' Supp.).  Additionally, in their brief, the original IV companies renewed their request that the Court "dismiss the Sherman Act and

Clayton Act allegations because the counterclaims contain no allegations sufficient to treat the Plaintiffs' separate patent portfolios as a single portfolio that might constitute a monopoly." Counter-Defs.' Br. 6.   The new IV companies also have moved to dismiss the Capital One companies' Third Party Complaint, ECF No. 296, and that motion also has been briefed fully, ECF Nos. 296-1, 305 & 316.[1]

The new IV companies argue for dismissal on three grounds.[2]   First, they, like the original IV companies, argue that the agency and alter ego allegations are not sufficient to establish a single entity with a single portfolio, insisting that the "few new conclusions" that the Third Party Complaint adds to the allegations in the Counterclaims do not cure this deficiency. Third Party Defs.' Mem. 7.   Second, they assert issue preclusion, based on the finality of the judgment in *Intellectual Ventures I LLC v. Capital One Financial Corp.* ("*Intellectual Ventures I*"), No. 13-00740 AJT, 2013 WL 6682981 (E.D. Va. Dec. 18, 2013), "as a result of Capital One's abandonment of its appeal."   *Id.* at 1.   Third, they argue that claim preclusion bars the Clayton Act claim.   *Id.* at 17.   Because the Capital One companies sufficiently alleged that the Intellectual Ventures companies are one entity for antitrust litigation purposes, and neither claim nor issue preclusion bars the Third Party Complaint, I will deny the new IV companies' motion. Yet, because the allegations that the Intellectual Ventures companies are one entity do not appear

---

[1] A hearing is not necessary with regard to either motion.  *See* Loc. R. 105.6.   The Capital One companies also filed a Motion to Seal, ECF No. 398, requesting that their Supplement, which contains confidential business information, be sealed. Given that the original IV companies do not oppose the motion to seal; the opposition contains confidential business information; and the Capital One companies filed a redacted version for the public, ECF No. 396, the Motion to Seal IS GRANTED.   Although the Supplement is sealed, I have determined, after reviewing this Memorandum Opinion, that none of its contents warrants sealing this Memorandum Opinion.

[2] They also "join the Plaintiffs' Motion to Dismiss Amended Antitrust Counterclaims 12, 13, and 14," ECF No. 225.   Third Party Defs.' Mem. 19–20.   As noted, I denied that motion.   July 1, 2015 Mem. Op. & Order.   Consequently, the new IV companies' Motion is denied insofar as it incorporates the original IV companies' Motion to Dismiss.

in the Counterclaims, the antitrust counterclaims against the original IV companies will be dismissed without prejudice to re-pleading to include allegations (such as those appearing in the Third Party Complaint) that the Intellectual Ventures companies are the same entity.

## Standard of Review

Dismissal is appropriate where a complaint "fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (citing Fed. R. Civ. P. 12(b)(6)). This means that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see Velencia*, 2012 WL 6562764, at *4. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Issue Preclusion

The new IV companies argue that "Capital One cannot plead a violation of Section 2 of the Sherman Act or Section 7 of the Clayton Act because the relevant market on which its antitrust claims depend has been rejected as a cognizable antitrust market" by the Eastern District of Virginia in *Intellectual Ventures I*, 2013 WL 6682981, at *5. Third Party Defs.' Mem. 12. There, the court concluded that "Capital One's proposed market is not a 'relevant market' under any recognized antitrust jurisprudence." *Id.* Acknowledging that this Court already "decided that res judicata (*claim preclusion*) was not a bar to the antitrust counterclaims," the new IV companies insist that *issue preclusion* is. *Id*. at 11–12 (emphasis added).

Collateral estoppel, or issue preclusion, bars relitigation of an issue or fact if

(1) *the issue or fact is identical* to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (emphasis added).

It is true that I considered claim preclusion, not issue preclusion, in my March 2, 2015 Memorandum Opinion, before the new IV companies were parties to this action.  There, I concluded that the Eastern District of Virginia's conclusion regarding Capital One's proposed market did not preclude the Capital One companies' Counterclaims.  *See Intellectual Ventures I LLC v. Capital One Finance Corp.*, 99 F. Supp. 3d 610, 616–20 (D. Md. 2015).  I also considered whether the Capital One companies sufficiently pled a relevant product market.  *Id.* at 620–24.  My observations in that regard are pertinent, as the allegations of relevant market are the same in the Third Amended Counterclaim and the Third Party Complaint.  *Compare* Third Am. Countercl. ¶ 156 *with* Third Party Compl. ¶ 49.

In this case, the Capital One companies claim that the 3,500 patents in the Intellectual Ventures companies' financial services portfolio constitute the relevant market.  *Intellectual Ventures I*, 99 F. Supp. 3d at 621.  Before the Virginia court, the Capital One companies claimed that "the relevant market [was] the 'market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide.'" *Intellectual Ventures I*, 2013 WL 6682981, at *5 (citation to E.D. Va. record omitted).  The court restated the relevant market as the Intellectual Ventures companies' "'portfolio of 3,500 or more patents,'" *id.*, the same market alleged here.

Nonetheless, as I observed last March, the factual allegations before me are not the same as those presented in Virginia:

> The [Virginia] court noted that in the cases that the Capital One companies cited, "the relevant market was defined in terms of what was a business necessity for the complaining businesses' lawful operation." [*Intellectual Ventures I*, 2013 WL 6682981, at *5.] The Virginia court opined that, in the case before it, "[t]he only 'business necessity' alleged [was], in essence, the business need to avoid future litigation," and that "the actual technologies included within the proposed market ... appear[ed] nearly irrelevant, since it is not the substantive, commercial usefulness or the merits of the technology that defines the market; but simply the patents in that market used to threaten Capital One, which consist entirely of IV's patent portfolio." *Id.*

> Yet, unlike in the earlier suit, Counterclaimants now allege:

> IV's financial-services portfolio in the United States constitutes a relevant licensing market because IV demands that banks license this portfolio to continue their commercial-banking services (and their redesigned alternatives), threatening and suing those banks that resist. Because IV sought and obtained such a large portfolio, banks do not have the option to license alternative portfolios, because such an alternative license would not eliminate IV's threat of ceaseless litigation. That is, there are no substitutes for a license to IV's portfolio, because IV removed the original patentees from the market and banks consequently cannot be free from IV's licensing demands and lawsuits, no matter how they implement the targeted features, products, and services, regardless of how great a price IV may charge, and irrespective of any other patentees from which banks might buy licenses. Capital One cannot avoid or negate IV's infringement claims by licensing patents or technologies from alternative sources. In short, IV has eliminated banks' access to substitutes for IV's license, both in the form of other patent licenses and banking-product designs, through a carefully orchestrated campaign of patent aggregation, concealment, and sham litigation.

Third Am. Countercl. ¶ 156 [*see also* Third Party Compl. ¶ 49 (same)]. On the factual allegations that Counterclaimants now make, their business necessity is not only to avoid litigation but also to continue to provide the online services they already offer without paying the cost-prohibitive licensing fees to the Intellectual Ventures companies—the only source of such licenses—, and, at this pre-discovery stage in the litigation, Counterclaimants adequately have alleged a plausible relevant market.

*Intellectual Ventures I*, 99 F. Supp. 3d at 622–23.  Thus, the facts pled pertaining to the relevant market are not "identical to the one previously litigated," and whether the Capital One companies sufficiently pled a relevant market on the augmented facts present in the pending counterclaims was not "actually resolved in the prior proceeding."  *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d at 326.  Therefore, collateral estoppel does not bar litigation of whether the Capital One companies sufficiently pled a relevant market.[3]  *See id.*

## Claim Preclusion

The new IV companies alternatively argue that claim preclusion, or res judicata, bars the Clayton Act claim.  *Id.* at 17.  Res judicata "'prevents litigation of all grounds for, or defenses to, recovery that were *previously available* to the parties, regardless of whether they were asserted or determined in the prior proceeding.'"  *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (quoting *Peugeot Motors of Am., Inc. v. E. Auto Distribs., Inc.*, 892 F.2d 355, 359 (4th Cir. 1989) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (internal quotation marks deleted)) (emphasis added)).  I already ruled in my March 2, 2015 Memorandum Opinion, with regard to the equivalent claims in the Third Amended Counterclaim, that res judicata does not bar the Capital One companies' Clayton Act claim and that they stated a claim under the Section 7 of Clayton Act.  *Intellectual Ventures I*, 99 F. Supp. 3d at 620, 630.  Specifically, I noted that the Capital One companies identified new facts that were not previously available to them.  *See*

---

[3] "Capital One's abandonment of its appeal" of the Eastern District of Virginia's ruling, which included the court's conclusion that "Capital One's proposed market is not a 'relevant market' under any recognized antitrust jurisprudence," Third Party Defs.' Mem. 1, 12, does not affect this outcome, as even assuming finality, the facts are not identical.  *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d at 326.  Indeed, the pending appeal did not lessen the finality of the Eastern District of Virginia ruling.  *See Guinness PLC v. Ward*, 955 F.2d 875, 898 (4th Cir. 1992) ("[T]he existence of a pending appeal does not render a judgment unenforceable nor suspend its preclusive effects absent a party obtaining a stay from either the rendering or enforcing court.").

*id.* at 618 ("'Capital One's proposed antitrust counterclaims derive from new conduct, including … acquiring more patents secretly through shell companies.'" (quoting Counterclaimants' Mem. 14)).   Undeterred, the new IV companies observe that I concluded that the Capital One companies stated a claim "'at least insofar as they base their allegation on patent acquisitions other than Plaintiffs' initial financial-services patent acquisitions.'"   *Id*. at 17–18 (quoting *Intellectual Ventures I*, 99 F. Supp. 3d at 630).   On this basis, the new IV companies insist that res judicata is, indeed, a bar because "Capital One does not allege a single patent acquisition after the filing of its counterclaims in the Eastern District of Virginia and merely identifies Plaintiffs' prior financial-services patent acquisitions," *id*. at 18 (citing Third Party Compl. ¶ 108), such that "[t]here are no 'new' or 'far more robust factual allegations' of patent acquisition by either Plaintiffs that occurred *after* . . . Capital One filed its antitrust counterclaims in the Eastern District of Virginia," *id.*

Yet, as the new IV companies noted, the Third Party Complaint alleges patent acquisitions as late as 2012, which certainly is later than "Plaintiffs' initial financial-services patent acquisitions," even if it predates the October 2013 counterclaims in Virginia.   In any event, my discussion of the required allegations of later patent acquisitions pertained to stating a claim, not res judicata.   *See Intellectual Ventures I*, 99 F. Supp. 3d at 630 (citing *United States v. E. I. du Pont de Nemours & Co*., 353 U.S. 586, 597 (1957)).   Moreover, as the new IV companies acknowledge, "Capital One alleges that 'IV began revealing its ownership of such patents incrementally in 2013 and 2014," starting around the summer of 2013." *Id*. at 19 (citing Third Am. Compl. ¶ 109).   This is the pivotal fact for res judicata purposes, a fact that extends beyond the October 2013 date of the Virginia counterclaims.   With this allegation, it is plausible that the Capital One companies learned information not previously available, namely, the full

extent of the Intellectual Ventures companies' patent ownership, after they filed their counterclaims in the Virginia suit in October 2013. *See* Third Am. Compl. ¶ 109.  Their later-acquired knowledge could be the facts necessary to push the quantity of the Intellectual Ventures companies' patents over the line to a Section 7 violation. *See Intellectual Ventures I*, 99 F. Supp. 3d at 630 ("[I]t may be that Plaintiffs' first 10, or 100, or 1,000 patent acquisitions did not violate § 7.  But, at some point, the acquisitions, as alleged, created a monopoly and crossed the line to actionable under § 7."); *E. I. du Pont de Nemours & Co.*, 353 U.S. at 597 (stating that the Clayton Act "seeks to prohibit and make unlawful certain trade practices … and thus, by making these practices illegal, to arrest the creation of monopolies" at "any time when the acquisition threatens to ripen into a prohibited effect").

Certainly, it is curious that the Capital One companies alleged a 3,500-patent portfolio in the Virginia litigation, *see* E.D. Va. Countercl. ¶ 89, ECF No. 296-2, and a 3,500-patent portfolio in their Third Party Complaint at ¶ 108.  Consequently, it does not appear that the Capital One companies included their later-acquired factual knowledge in their pleading in this case.  Yet, the details regarding the facts that the Capital One companies have alleged (if the alleged facts themselves are otherwise sufficient to state a plausible claim) are better left to discovery than to a motion to dismiss, where the question of factual sufficiency must be examined in light of the requirements of notice pleading.  If discovery reveals flaws in the Capital One companies' antitrust theory, summary judgment will allow them to be explored.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (holding that "stating … a claim requires a complaint with enough factual matter (taken as true) to suggest that [the elements of the cause of action exist]"; noting that there is no "probability requirement at the pleading stage," as the notice pleading requirements "simply call[] for enough fact to raise a reasonable expectation that discovery will

reveal evidence of [the elements]").  Thus, the earlier counterclaim is not a bar to the Clayton

Act claim in the Third Party Complaint.  *See Meekins*, 946 F.2d at 1057.

### Allegations that the Intellectual Ventures Companies Are a Single Entity

Monopolization under Section 2 of the Sherman Act involves "'independent activity by a

single entity,'" as opposed to "a concerted effort by more than one entity to fix prices or

otherwise restrain trade," for which § 1 of the Sherman Act applies.  *See Va. Vermiculite, Ltd. v.*

*Historic Green Springs, Inc.*, 307 F.3d 277, 281 (4th Cir. 2002) (quoting *Fisher v. Berkeley*, 475

U.S. 260, 266 (1986)).  Likewise, Section 7 of the Clayton Act limits the acquisitions of a single

entity, stating that "[n]o *person* engaged in commerce or in any activity affecting commerce shall

acquire, directly or indirectly, the whole or any part of the stock or other share capital . . . where

. . . the effect of such acquisition may be substantially to lessen competition, or to tend to create a

monopoly."  15 U.S.C. § 18 (emphasis added).  Without pleading that the Intellectual Ventures

companies are the same entity, the Capital One companies cannot state a claim against the

Intellectual Ventures companies under Section 2 or Section 7.  *See id.*

"Any anticompetitive activities of corporations and their wholly owned subsidiaries

meriting antitrust remedies may be policed adequately without resort to an intra-enterprise

conspiracy doctrine. . . .  [T]he enterprise is fully subject to § 2 of the Sherman Act . . . ."

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984).  And, "[w]hen the

parent controls, directs, or encourages the subsidiary's anticompetitive conduct, the parent

engages in sufficient independent conduct to be held directly liable as a single enterprise with the

subsidiary under the Sherman Act."  *Nobody in Particular Presents, Inc. v. Clear Channel*

*Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1070 (D. Colo. 2004); *see also Copperweld*, 467 U.S. at

770–71 ("[T]here can be little doubt that the operations of a corporate enterprise organized into

divisions must be judged as the conduct of a single actor. . . . Antitrust liability should not depend on whether a corporate subunit is organized as an unincorporated division or a wholly owned subsidiary." (discussing § 1 of the Sherman Act and the insusceptibility of a parent and its wholly owned subsidiary to antitrust liability for conspiracy under § 1)).  Thus, the Capital One companies' antitrust counterclaims and third party claims are sufficient if they allege that one Intellectual Ventures company is a parent company, controlling or directing the anticompetitive conduct of the other Intellectual Ventures companies.  *See Copperweld*, 467 U.S. at 770–71, 777; *Nobody in Particular*, 311 F. Supp. 2d at 1070.

Considering first the Third Party Complaint, it describes the Intellectual Ventures companies' corporate structure sufficiently to withstand dismissal.  Specifically, the Capital One companies allege that Intellectual Ventures Management, LLC "'through some complicated set of LLCs and limited partnerships' manages IV I," and "[t]he same is true of Intellectual Ventures Management LLC's control of IV II."   Third Party Compl. ¶ 11 (quoting Myhrvold Dep.). Nathan Myhrvold, CEO for Intellectual Ventures, also testified that "that IV I 'is an entity that we set up primarily to be the plaintiff for lawsuits,'" and 'it basically holds the patent assets to be filed in patent lawsuits.'"  *Id.* (quoting Myhrvold Dep.).  Moreover, the Third Party Complaint explicitly states that "Intellectual Ventures Management, LLC controls all IV entities," and provides a chart to "summarize[] Intellectual Ventures' corporate structure," in which all Intellectual Ventures entities, directly or indirectly, report to Intellectual Ventures Management, LLC.  *Id.* ¶ 12.  These allegations suffice at the pleading stage to allege that Intellectual Ventures Management, LLC is the parent company, the other Intellectual Ventures companies are subsidiaries, and the parent company controls the subsidiaries.  *See Nobody in Particular*, 311 F.

Supp. 2d at 1070.  Therefore, this is not a basis for dismissal of the third party claims.  *See* Fed.

R. Civ. P. 12(b)(6); *Velencia*, 2012 WL 6562764, at *4.

The outcome is different with regard to the Counterclaims, however.  The Capital One

companies insist that, for purposes of pleading monopolization, they "only had to allege that the

entities are commonly owned and controlled," and the original IV companies "do[] not dispute

that Capital One has met that requirement."  Countercls.' Br. 1; *see id.* at 7.  Yet, the original IV

companies *do* dispute this.  They contend:

> There are no allegations in the counterclaims plausible to allege common
> ownership or control.  Capital One wrongly relies on testimony submitted in
> connection with its new brief and allegations from Capital One's Third Party
> Complaint against Intellectual Ventures Management, LLC, Invention Investment
> Fund I, L.P., and Invention Investment Fund II, LLC, not the Plaintiffs, to support
> the existence of plausible common ownership or control allegations.

Counter-Defs.' Br. 2.  Moreover, the Capital One companies continue to assert that the alter ego

and agency allegations, *see* Third Am. Countercl. ¶¶ 10–12, are "irrelevant to whether Capital

One adequately pled monopolization, attempted monopolization, and unlawful asset acquisition

by the IV entities."  Countercls.' Br. 1.  Therefore, I will not consider them in assessing the

sufficiency of the claims.  The original IV companies' Motion to Strike IS DENIED AS MOOT.

Yet, even were I to consider (in the interest of justice under Fed. R. Civ. P. 1) the alter

ego and agency allegations that original IV companies ask me to disregard, there is no reference

in the Counterclaims to a parent company or subsidiaries.  The allegations of management and

control, present in the Third Party Complaint, are nowhere to be found.  Rather, Paragraphs 11–

13 only allege "agency relationships," with the original IV companies acting "solely as the agent

of" and "mere vessels for" the new IV companies, and with their "actions . . . imputed" to the

new IV companies.  Third Am. Countercl. ¶¶ 11–13.  Unlike in the Third Party Complaint, they

do not allege that one of the new IV companies is the parent company that controls all of the other Intellectual Ventures companies. *Compare* Third Party Compl. ¶¶ 11–12, *with* Third Am. Countercl. ¶¶ 11–13.  Consequently, the Capital One companies have not alleged "'independent activity by a single entity.'"  *See Va. Vermiculite*, 307 F.3d at 281 (citing *Fisher*, 475 U.S. at 266); *Copperweld*, 467 U.S. at 777; *Nobody in Particular*, 311 F. Supp. 2d at 1070.  Therefore, they have failed to state a claim for a Section 2 violation.  *See Va. Vermiculite*, 307 F.3d at 281; *Sun Dun, Inc. of Wash. v. Coca-Cola Co.*, 740 F. Supp. 381, 391–92 (D. Md. 1990) (dismissing Section 2 claim based on allegations that "two or more competitors conspire[d] to create a market environment in which competition and market entry is improperly restricted, but in which market power continues to be shared among these otherwise unrelated entities").  Nor have they stated an antitrust claim under the Clayton Act.  *See* 15 U.S.C. § 18; *see also Copperweld*, 467 U.S. at 770–71.  Therefore, the antitrust counterclaims against the original IV companies will be dismissed without prejudice to re-pleading to include allegations (such as those determined to be sufficient in the Third Party Complaint) that the original IV companies are the same entity.  *See* Fed. R. Civ. P. 12(b)(6); *Velencia*, 2012 WL 6562764, at *4.

Given that I have determined that the third party claims against the new IV companies do state antitrust claims under both the Sherman and Clayton Acts, I have little doubt that the Capital One companies will state a plausible counterclaim sufficiently by including the additional allegations of the third party claims in an amended counterclaim.  While the original IV companies will have an opportunity to file an amended answer, it would be unwise for them to look at this as an opportunity to seek leave to file another motion to dismiss.  The time has come to move forward with discovery.

To that effect, the parties will meet and confer to discuss the current pretrial schedule and to discuss a discovery plan.  If having a Rule 16 conference with me would be helpful, counsel should let me know and I will schedule one.

## ORDER

Accordingly, it is, this 14th day of January, 2016, hereby ORDERED that

1.  The original IV companies' Motion to Strike, ECF No. 225, IS DENIED AS MOOT;

2.  The original IV companies' renewed Motion to Dismiss, ECF No. 362, IS GRANTED without prejudice to the Capital One companies re-pleading on or before February 4, 2016 to include allegations that the original IV companies are the same entity;

3.  The original IV companies may file an amended answer on or before February 18, 2016;

4.  The new IV companies' Motion to Dismiss, ECF No. 296, IS DENIED;

5.  The Capital One companies' Motion to Seal, ECF No. 398, IS GRANTED; and

6.  The parties will meet and confer to discuss the current pretrial schedule and to discuss a discovery plan by January 28, 2016 and submit any joint proposed modifications to the Scheduling Order by February 4, 2016.


_____/S/_____
Paul W. Grimm
United States District Judge

lyb