**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **INTELLECTUAL VENTURES I LLC,** *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: PWG-14-111 |
| **CAPITAL ONE FINANCIAL CORP.,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses a discovery dispute in an antitrust case between Intellectual Ventures I LLC and Intellectual Ventures II LLC ("Intellectual Ventures") and Capital One Financial Corp., Capital One Bank (USA), N.A., and Capital One, N.A. ("Capital One"). On May 13, 2016, Capital One objected to Intellectual Ventures's privilege log as failing to provide sufficient information for Capital One to assess Intellectual Ventures's privilege claims as to 13,000 documents. Defs.' May 13, 2016 Ltr., ECF No. 466. Subsequently, the parties narrowed the discovery dispute to 1,373 documents, but Capital One continued to object to the sufficiency of Intellectual Ventures's privilege log. Defs.' June 20, 2016 Ltr., ECF No. 474. At a June 30, 2016 status conference, I summarized the law and my own case-management procedures that govern civil discovery and privilege claims. June 30, 2016 Status Conference Tr. 3:12–4:24, 8:2–14:18, ECF No. 488. I then directed Intellectual Ventures's senior attorneys to personally review the 1,373 documents over a twenty-two day

period to confirm that their assertions of attorney-client privilege and work-product protection comported with the law and procedures I had outlined. *Id.* at 12:12–18, 14:19–15:16, 22:4.

After the status conference, the parties further narrowed the number of disputed documents to 130 emails derived from 37 discreet email chains and met on August 4, 2016 to discuss Capital One's remaining challenges. When the parties were unable to resolve their residual disagreements, Capital One submitted a letter on August 5 requesting permission to file a Motion to Compel Production of the 130 documents. ECF No. 497. At an August 19, 2016 in-court status conference, I held that Intellectual Ventures waived the attorney-client privilege and work-product protection for all but two of the thirty-seven email chains by failing to provide a sufficient factual basis to support their privilege claims. Aug. 22, 2016 Paperless Order, ECF No. 506. Intellectual Ventures submitted a letter requesting permission to file a Motion for Reconsideration of this ruling, Pls.' Mem., ECF No. 511, to which Capital One responded in opposition, Defs.' Opp'n, ECF No. 513. I informed the parties that I would treat their letters as a Motion for Reconsideration and as an Opposition respectively, ECF No. 520, and provided Intellectual Ventures an opportunity to file a Reply, of which Intellectual Ventures availed itself, ECF No. 529.

Rule 54(b) governs motions for reconsideration of orders such as the August 22, 2016 Paperless Order "that adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b). It provides that such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.*

The Fourth Circuit has not stated a standard for review of a Rule 54(b) motion, but it has said that, "generally at least, a review of an interlocutory order under Rule 54 is not subject to the

restrictive standards of motions for reconsideration of final judgments under Rule 60." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991); *see also Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Nor is the standard for Rule 59(e) binding on review under Rule 54. *See Am. Canoe Ass'n*, 326 F.3d at 514; *Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC-13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014). Nonetheless, "courts frequently look to these standards for guidance in considering such motions." *Cezair*, 2014 WL 4955535, at *1; *see also Peters v. City of Mt. Rainier*, No. GJH-14-955, 2014 WL 4855032, at *3 n.1 (D. Md. Sept. 29, 2014) (looking to Rule 60(b) standard); *Harper v. Anchor Packing. Co.*, No. GLR-12-460, 2014 WL 3828387, at *1 (D. Md. Aug. 1, 2014) (looking to Rule 59(e) standard); *Potter v. Potter*, 199 F.R.D. 550, 552 n.1 (D. Md. 2001) (applying Rule 59(e) standard). A Rule 59(e) motion "need not be granted unless the district court finds that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010). Rule 60(b) provides overlapping, but broader, bases for relief from a court order, including that there has been "mistake, inadvertence, surprise, . . . excusable neglect[,] . . . newly discovered evidence[,] . . . fraud . . . , misrepresentation, or misconduct"; that "the judgment is void" or "has been satisfied"; or "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

In keeping with these standards, this Court has held that "[a] motion for reconsideration is appropriate to 'correct manifest errors of law or fact or to present newly discovered evidence,' or where there has been an intervening change in controlling law." *Potter*, 199 F.R.D. at 552 n.1 (citations omitted). It "is not a license for a losing party's attorney to get a second bite at the apple." *Id.* at 552–53 (quoting *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Co. 1988)). These

"rules of constraint . . . make sense when a district court is asked to reconsider its own order" because "[w]ere it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court—not to mention its patience." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 452–53 (4th Cir. 2005) (quoting *Potter*, 199 F.R.D. at 553).

Intellectual Ventures seeks reconsideration of my ruling that it waived privilege as to thirty-five of the thirty-seven disputed email chains "on the grounds that [it was] mistaken" about my expectation that it provide affidavits in support of its continued assertions of privilege. Pls.' Mem. 3. Specifically, Intellectual Ventures argues that providing affidavits was impractical because, after senior attorneys reviewed the 1,373 disputed documents, the company continued to assert privilege for 1,114 of them and met with Capital One to discuss the remaining documents one day after completing its review. Pls.' Reply 2. And though the parties were able to winnow the dispute to only 130 emails, Capital One filed its request to file a Motion to Compel Production of the remaining emails the very next day. *Id.* at 3. As a result, Intellectual Ventures argues that it had no reasonable opportunity to produce affidavits supporting its assertion of privilege as to the more manageable number of emails. *Id.*

Capital One contends that Intellectual Ventures could have provided affidavits in support of its continued assertions of privilege between Capital One's August 5 request for permission to file a Motion to Compel and the August 19 status conference during which I ruled in Capital One's favor. Defs.' Opp'n 2–3. Intellectual Ventures answers that it had no obligation to provide affidavits during the two weeks prior to the August 19 status conference because Capital One had failed to provide "notice of [the privilege log's] deficiencies" and because once Capital One sought to file a Motion to Compel, "[t]he Intellectual Ventures companies were required to

respond, rather than prepare affidavits." Pls.' Reply 3 (citation omitted). Intellectual Ventures also continues to question the utility of affidavits and insists that "[a]n *in camera* review [of the disputed documents] is the only tool available to resolve the parties' factual dispute." Pls.' Mem. 1.

As I discussed with the parties during the June 30 status conference, the party objecting to the production of discovery on the basis that it is beyond the scope of Fed. R. Civ. P. 26(b)(1) due to privilege bears the burden of proving the applicability of privileges. *United States v. Cohn*, 303 F. Supp. 2d 672, 679 (D. Md. 2003). The Federal Rules of Civil Procedure require the party asserting a privilege to "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The Discovery Order I issued in this case mandates "compliance with the Discovery Guidelines for the United States District Court for the District of Maryland." ECF No. 130-1. These Guidelines specify that when the party requesting discovery objects to the assertion of a privilege, the party from whom discovery is sought must "provide sufficient factual information, *including by affidavit*, to establish the factual basis for each claim of privilege or protection that has been claimed." D. Md. Loc. R., App'x A, Guideline 10(d)(iv) (emphasis added). Failure to do so "result[s] in waiver of any privilege / protection that has been claimed." *Id.*

As I also indicated, these principles are further reflected in *Neuberger Berman Billman Real Estate Income Trust v. Lola Trust No. 1B*, 230 F.R.D. 398 (D. Md. 2005). In that case, the Court noted that "[i]t is incumbent upon the proponent to specifically and factually support his claim of privilege, *usually by affidavit*, to satisfy [its] burden, and an improperly asserted privilege is the equivalent of no privilege at all." 230 F.R.D. at 409–10 (quoting *Byrnes v. Jetnet*

*Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986)) (emphasis added). Boilerplate objections in a privilege log are insufficient. *See id.* at 410 ("The party withholding the document, of course, must provide that context by way of evidence, not just argument.").

Intellectual Ventures cannot credibly argue that it was "mistaken" about my expectations or its obligations under the Federal Rules, Local Rules of this Court, Discovery Guidelines of this Court, and my Discovery Order. *See* Pls.' Mem. 3. After reviewing its documents with the principles I emphasized in mind, Intellectual Ventures chose to stand on its privilege log as a sufficient factual basis for Capital One and this Court to assess its assertions of attorney-client privilege and work-product protection. Having realized that I do not find the vast majority of its privilege-log entries sufficiently informative, Intellectual Ventures now seeks a "second bite at the apple," which is not R. 54(d)'s purpose. *Potter*, 199 F.R.D. at 552–53 (quoting *Shields*, 120 F.R.D. at 126).

Intellectual Ventures also had ample notice of its privilege log's deficiencies. Capital One first raised concerns about the privilege log on May 13, 2016, noting that the Intellectual Ventures failed to provide a "complete list of [communication] recipients" and to "clearly designate . . . which of those recipients are attorneys or third parties." Defs.' May 13, 2016 Ltr. 1. After the parties attempted over the course of a month to reconcile their disagreements, Capital One sought court intervention to resolve the discovery dispute, explaining that "the privilege log indicates [that the withheld communications] relate to business, not legal, advice." Defs.' June 20, 2016 Ltr. 1. And at the June 30 status conference call, I emphasized that Intellectual Ventures bore the burden of providing a sufficient factual basis for Capital One and the Court to distinguish between communications for the purposes of obtaining legal advice and

those conducted for business purposes.  June 30, 2016 Status Conference Tr. 9:2–10:14, 13:4–14:1.

As I discussed with the parties at the June 30 status conference, this District's Discovery Guidelines and case law identify affidavits as the primary means of establishing a factual basis for the assertion of privileges.  *Id.* 3:12–4:24, 8:2–14:18.  Capital One is correct that Intellectual Ventures could have provided affidavits in the two weeks prior to the August 19 status conference.  Intellectual Ventures seems to imply that Capital One's request for permission to file a Motion to Compel triggered a duty to respond to the filing that somehow either extinguished its burden to provide a factual basis supporting its privilege claims or shifted the burden of production to Capital One.  *See* Pls.' Reply 3.  But responding to Capital One's filing and buttressing the factual foundation for the assertion of privilege was not an either-or proposition.  Intellectual Ventures could and should have both defended the adequacy of its privilege log in a responsive filing—which it largely failed to do—and also continued to bolster the factual basis either by affidavit—which the Guidelines and case law highlighted and I personally underscored as the preferred mechanism—or, alternatively, by providing more fulsome explanations in its privilege log.  It elected none of the above.  Instead, Intellectual Ventures chided Capital One for its "unwillingness to accept the fact that the Intellectual Ventures companies understand the difference between 'business' and 'legal' matters."  Pls.' Aug. 11, 2016 Ltr. 2, ECF No. 502.  Intellectual Ventures missed the point.  It was Intellectual Ventures's burden to provide a factual basis to support its privilege claims, not Capital One's burden to establish the absence of a factual basis.  Neither Capital One nor the Court need "accept" Intellectual Ventures's *ipse dixit* that it "understand[s] the difference between

7

'business' and 'legal' matters, and ha[s] acted in good faith in preparing and reviewing the privilege log." *See id.*

Although Intellectual Ventures continues to argue that its "privilege log descriptions provide sufficient factual information to establish each element of the attorney-client privilege," Pls.' Reply 4, this position is directly contrary to my ruling that the privilege log was insufficient as to thirty-five of thirty-seven entries. Aug. 19, 2016 Status Conference Tr. 30:5–10, ECF No. 507 ("[W]hen I looked at [the privilege log] . . . I asked myself if I looked at what that cell said, would I have enough information to be able to decide whether the work product privilege or attorney/client privilege had been properly invoked. And in most cases, the answer was no. And that is why the affidavit was required."). Intellectual Ventures neither claims nor provides any evidence to suggest that that ruling was manifestly erroneous. *See Potter*, 199 F.R.D. at 552 n.1.

As Intellectual Ventures suggests, it is possible that affidavits or a more fulsome privilege log would not have enabled Capital One or the Court to divine a clear line distinguishing business and legal communications. *See* Pls.' Mem. 1; Pls.' Reply 4. Had Intellectual Ventures satisfied its burden to provide a factual basis in support of its privilege claims, perhaps *in camera* review would have been necessary to resolve the matter. It did not, it is not. Intellectual Ventures's Motion for Reconsideration is denied.

## ORDER

Accordingly, for the reasons stated in this Memorandum Opinion and Order, it is this 11th day of October, 2016, hereby ORDERED that

Intellectual Ventures's Motion for Reconsideration, ECF No. 511, IS DENIED.

/S/
Paul W. Grimm
United States District Judge

jlb