MARY C. ZINSNER
703.734.4363 telephone
703.448.6514 facsimile
mary.zinsner@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia  22182
703.734.4334 telephone
troutmansanders.com

March 23, 2017

**VIA ECF**

The Honorable Paul W. Grimm
United States District Judge
United States District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

> **Re:**   ***Intellectual Ventures I LLC, et al. v. Capital One Financial Corp., et al.,***
> ***8:14-cv-111 (PWG) – IV's identification of experts***

Dear Judge Grimm:

The Court's March 15, 2017 Letter Order explained that the Court's "practice [is] to limit parties to a single expert per discrete subject matter for both summary-judgment practice and trial" and noted that the Court had shared its views regarding how it "will address duplicative expert testimony at either stage of the case." ECF No. 619.  During the telephone conference on March 15, the Court explained it would not allow Intellectual Ventures ("IV") to Balkanize Capital One's expert reports and use multiple experts to respond to different pieces of Capital One's expert reports.  In light of these instructions, the Court asked IV to submit a letter "identify[ing] the experts whose opinions it intends to put forward as part of its summary-judgment briefing." *Id.*

IV's March 20 letter to the Court states that IV will rely on at least 17 and possibly 18 of the 19 experts from whom IV submitted reports on March 9.  ECF No. 621 (excluding only Richard Baker and possibly also Jay Kesan).  Capital One thus believes that IV has still "designated multiple experts that address the same subject matter," as the Court observed on March 15. ECF No. 619.  Capital One respectfully requests guidance from the Court regarding this issue so that Capital One knows which of IV's expert reports to focus on when it submits its reply expert reports on April 4 and so that the parties and Court know precisely which experts will be the focus of summary judgment briefing and trial; otherwise, Capital One will need to spend resources working with its experts to respond to duplicative and overlapping testimony.

IV's March 20 letter confirms that IV has failed to comply with the Court's order to eliminate duplicative experts because IV is still attempting to carve subject matters into artificial sub-topics, so as to respond to Capital One's three experts with multiple IV experts.  In its letter, IV states it will rely on six non-technical experts—Richard Gilbert, Karl Schulze, Steven Kursh, Stephen Schutze, Adam Mossoff, and Graham Gerst, ECF No. 621 at 1, to respond to Capital One's three experts, Professor Fiona Scott Morton, Christopher Bakewell, and Stephen Mott.  And IV refuses to rule out relying on a seventh non-technical expert, Jay Kesan.  *Id.* at 2.  Although IV's letter states only the issues those seven experts will address, and not which of Capital One's three experts the issues relate to, the experts' reports make clear that they respond to the same Capital One experts.  Specifically, Professor Gilbert, Mr. Schulze, Mr. Kursh, and

Professor Kesan each seek to reply to Professor Scott Morton's testimony about the economic issues in this case:

- Gilbert: "I have been asked by counsel for [IV] to respond to the expert report of Professor Fiona M. Scott Morton submitted on behalf of Capital One."   Gilbert 3/9/2017 Report ¶ 9.   The remainder of Professor Gilbert's report is a response to Professor Scott Morton's report.

- Schulze: "I have also been asked to comment on the Expert Report of Professor Fiona Scott Morton, dated February 9, 2017," and has a thirteen page section of his report entitled "Analysis of and Response to the Opinions of Professor Fiona Scott Morton, as Detailed in an Expert Report Dated February 9, 2017."  Schulze 3/9/2017 Report at 1, 17-29.

- Kursh: Cites Professor Scott Morton's testimony ten separate times throughout his "Summary of Opinions" section and argues (as does Professor Gilbert) that Professor Scott Morton's market definition is incorrect and that Professor Scott Morton wrongly concluded that there was evidence of anticompetitive conduct/antitrust injury.  Kursh 3/9/2017 Report ¶¶ 35-44.

- Kesan: "I have been asked to respond to Professor Scott Morton's citation of the Bessen and Meurer 'Direct Costs' article."  Kesan 3/9/2017 Report ¶ 7.

Similarly, Mr. Gerst and Mr. Mossoff both seek to reply to Mr. Bakewell's  testimony on patent licensing practices:

- Gerst: "I also was asked to review the expert report of W. Christopher Bakewell, dated February 9, 2017, and to review Mr. Bakewell's qualifications and the opinions, analyses, and methodologies discussed in his report."  Gerst 3/9/2017 Report at 2. Over 40 pages of Mr. Gerst's report fall under the section entitled "Response to W. Christopher Bakewell February 9 Report."  *Id.* at 36-77.

- Mossoff: "I have been retained to present my and scholars' historical research on the patent licensing practices by inventors and corporate entities in the U.S. innovation economy, as well as on historical patent litigation rates and how they compare to litigation rates today."  Mossoff 3/9/2017 Report ¶ 9.

This joint attack alone conflicts with the Court's guidance during the March 15 teleconference that multiple IV experts responding to the same Capital One expert would be a "transparent attempt to get around the [Court's] limitation," as well as with the Court's Discovery Guideline 3(c), which encourages parties "not to designate multiple experts on the same or similar topics."

Further, the issues that IV identifies for these seven experts overlap, demonstrating that IV is still attempting to carve subject matters into artificial sub-topics.  For example:

1. Both Gerst and Mossoff relate to patent licensing.  The only distinction between "Patent Ecosystem and Licensing" (Gerst) and "Historical Perspective on Non-Practicing Entities" (Mossoff), ECF No. 621 at 1, is temporal.  Indeed, a sub-section of Mr. Gerst's report specifically addresses "Non-Practicing Entities."  Gerst 3/9/2017 Report at 11-15.

2. Gilbert and Schutze both relate to substitutes with regard to market definition.  IV offers Mr. Schutze for "Absence of Standard Essential Patents; Certain Substitutes," ECF No. 621 at 1, but Mr. Gilbert also extensively addresses substitutes.  *See, e.g.*, Gilbert 3/9/2017 Report ¶¶ 50-64 ("[IV's] patent portfolio covers a wide variety of disparate, nonsubstitutable technologies that warrant defining multiple technology markets for the analysis in this case"), ¶¶ 65-94 ("Professor Scott Morton's definition of a single relevant market for all the patents in Intellectual Ventures' portfolio fails: she does not show that it contains any close substitutes much less that it contains sufficient substitutes and only substitutes").

3. Gilbert and Kursh both relate to the existence of a monopoly, market definition, and consumer harm.  IV offers Mr. Kursh for "Banking Industry Technology Background," ECF No. 621 at 1, but Mr. Kursh also addresses the same economic questions as Mr. Gilbert, such as the existence of a monopoly, market definition, and consumer harm. *See, e.g.*, Expert Report of Steven R. Kursh, ¶¶ 35-44.

There is no basis for IV's continued reliance on seven non-technical experts to respond to Capital One's three experts.

Likewise, IV has designated 9 technical experts to address 9 of the patents asserted against Capital One, several of whom are addressing overlapping patents (*e.g.*, David Goldschlag and Sigurd Meldal address the '084 patent; Martin Kaliski and Tim Williams address the '002 patent; and Frederic Chong and Hugh Smith address the '574 patent).  And IV has designated both technical and a damages expert to address the '137, '382, and '666 patents (even though the '666 patent was never asserted against Capital One).  Again, IV should not be allowed to rely on multiple experts to address the same subjects.

Accordingly, Capital One respectfully requests the Court direct IV to narrow its list of experts by ordering IV to respond to each of Capital One's three experts with only one expert, striking IV's other non-technical expert reports for both summary judgment and trial purposes, and requiring IV to limit its technical experts to just a single expert per patent.

Respectfully submitted,

/s/ Mary C. Zinsner
Mary C. Zinsner

cc:  Counsel of Record (via ECF)