IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, *et al.*, | * | |
| Plaintiffs/Counter-Defendants, | * | Case No. DLB-14-111 |
| v. | * | |
| CAPITAL ONE FINANCIAL CORP., *et al.*, | * | |
| Defendants/Counterclaimants/ Third-Party Plaintiffs, | * | |
| v. | * | |
| INTELLECTUAL VENTURES MANAGEMENT, LLC, *et al.*, | * | |
| Third-Party Defendants/ Joined Counter-Defendants. | * | |

## MEMORANDUM OPINION AND ORDER

This end-of-litigation dispute requires the Court to determine which among the plaintiffs, the defendants, and the third-party defendants—each of which prevailed on claims—is "the prevailing party" for purposes of awarding litigation costs under Rule 54(d) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court finds the defendants are "the prevailing party." The Clerk's order taxing costs, ECF 722, is affirmed, and the plaintiffs and the third-party defendants' joint request for $289,006.39 in costs incurred in the district court is denied.

### I. Procedural History

#### A. The Claims

This case began in 2014 when the plaintiffs Intellectual Ventures I, LLC and Intellectual Ventures II, LLC (together, "IV") filed a patent infringement action against Capital One Financial

Corporation and related entities (collectively, "Capital One"). IV alleged that Capital One's banking practices infringed five patents in IV's extensive patent portfolio. After IV voluntarily dismissed one of its patent infringement claims, four remained. Before IV filed this lawsuit, IV had filed a nearly identical lawsuit against Capital One in the Eastern District of Virginia asserting infringement claims based on five other patents. *Intell. Ventures I LLC v. Capital One Fin. Corp.*, No. 1:13-cv-00740 (AJT/TCB) (E.D. Va.).[1]

Here and in Virginia, Capital One filed antitrust counterclaims against IV and a third-party complaint against three IV-related entities, Intellectual Ventures Management, LLC, Invention Investment Fund I, L.P., and Invention Investment Fund II, LLC ("IV third-party defendants") (collectively with IV, "the IV companies"), for monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and unlawful asset acquisition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. Capital One claimed that the IV companies are "patent trolls"—companies that acquire patents that are not used to protect an invention but to obtain a license fee from, or judgment against, an alleged patent infringer. Capital One asserted that IV's business practice was to acquire thousands of patents that purportedly deal with

---

[1] In that case, IV voluntarily dismissed its claims under two patents with prejudice, conceding as to one patent that "proving Defendants' liability [would be] problematic." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, No. 1:13CV0740 (AJT/TCB), 2015 WL 7283108, at *1–2 (E.D. Va. Nov. 17, 2015). The parties stipulated to non-infringement of a third patent, and the court dismissed the plaintiffs' claims under that patent and entered a judgment of non-infringement in Capital One's favor. *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1365 (Fed. Cir. 2015). As for infringement claims based on the last two patents, the parties stipulated to the dismissal with prejudice of some of them and the dismissal without prejudice of Capital One's non-infringement and invalidity counterclaims. *Intell. Ventures I*, 2015 WL 7283108, at *1–2. The court entered judgment in Capital One's favor on the remaining infringement claims because the asserted claims of the two patents at issue were invalid. *Intell. Ventures I*, 792 F.3d at 1365–66. The Federal Circuit affirmed the judgments in Capital One's favor. *Id.*

technology essential to the commercial banking industry (such as ATMs, mobile banking, and credit card transactions).  Armed with this extensive patent portfolio, IV then made "offers" for banks to license its entire portfolio for a period of years at extremely high prices.  Capital One alleged that when banks would ask IV for details about the patents covered in the portfolio to determine whether their services infringe them, IV refused to disclose information that would allow banks to make an intelligent decision about whether they should agree to the license. If the banks did not agree to license the portfolio at IV's offering price, IV then threatened to file a patent infringement claim against the bank based on a handful of patents.  According to Capital One, IV informs banks that if IV loses the patent infringement case, it will file another case based on a different set of its patents, until the prospect of endless high-cost litigation forces the bank to capitulate and to license the entire portfolio.  Capital One alleged that the IV companies pursued this approach with it, first offering to license their patent portfolio, then filing the patent infringement action in the Eastern District of Virginia, and then filing this action.[2]

### B.  Disposition of the Patent Infringement Claims

Capital One defended the patent infringement claims on the ground that the patents were invalid.  The parties engaged in extensive discovery and agreed to refer the matter to a Special Master experienced in patent law.  The Special Master oversaw discovery, and after the parties extensively briefed the patent infringement claims, he issued two reports and recommendations, in which he ruled in favor of IV with respect to the '081 and '002 patents and in favor of Capital One with respect to the '409 and '084 patents.  Both parties challenged the Special Master's rulings adverse to them, and further briefing ensued.  The Court ultimately overruled the

---

[2]  This summary of Capital One's allegations is taken largely from the Court's opinion on the antitrust claims, *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F. Supp. 3d 691, 696–97 (D. Md. 2017).

Special Master with respect to the '081 and '002 patents and found that they were invalid under 35 U.S.C. § 101.  The Court further ruled that IV was collaterally estopped from bringing the infringement claims regarding the '409 and '084 patents because the United States District Court for the Southern District of New York, in *Intellectual Ventures v. JPMC*, Case No. 13-3777-AKH, 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015), previously concluded those patents, too, were invalid under 35 U.S.C. § 101.  Without any valid patents, IV's infringement claims against Capital One failed as a matter of law.  The Court entered summary judgment in Capital One's favor on all of IV's claims.  *Intell. Ventures I LLC v. Capital One Fin. Corp.*, No. PWG-14-111, 2015 WL 5201356 (D. Md. Sept. 4, 2015).  The Federal Circuit affirmed.  *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332 (Fed. Cir. 2017).

### C.  Disposition of the Antitrust Claims

IV defended Capital One's antitrust claims on the ground that it legitimately purchases valid and enforceable patents and then offers to license its patent portfolio to banks, beginning with an opening offer and expecting the bank to counteroffer and the parties eventually to agree on a licensing fee.  When Capital One and IV did not come to an agreement, IV filed suit against the bank, which IV characterizes as an "efficient infringer"—an entity that engages in its business without regard for whether it infringes on patents held by others, knowing that a patent infringement case is expensive and many patent holders do not have the resources to protect their rights.  The IV companies unsuccessfully opposed Capital One's motion for leave to amend to add

the counterclaims and unsuccessfully twice moved to dismiss the counterclaims and the third-party complaint for failure to state a claim.[3]

After another round of extensive discovery and the appointment of a technical advisor, the Court granted summary judgment in favor of the IV companies on the antitrust claims. The Court found that the IV companies were immune from antitrust liability by the *Noerr–Pennington* doctrine, which protects private parties from antitrust liability based on unsuccessful litigation attempts to enforce laws with potentially anti-competitive effects. The Court also found that Capital One was collaterally estopped from asserting the antitrust claims because the Virginia court previously dismissed Capital One's identical antitrust claims for failure to adequately allege a relevant market. This Court found that the definition of the alleged market in the Virginia case was materially the same as the market alleged in this case. Capital One, therefore, was collaterally estopped from asserting antitrust claims against IV based on the market definition the Virginia court found legally inadequate. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 280 F. Supp. 3d 691, 696–97 (D. Md. 2017). The Federal Circuit affirmed on collateral estoppel grounds. *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 937 F.3d 1359, 1378 (Fed. Cir. 2019).

The IV companies filed a bill of costs seeking $289,006.39 in costs incurred in defending the antitrust claims and $266.33 in appellate costs. ECF 711. The Clerk concluded that Capital One was the "prevailing party," denied the IV companies' request for $289,006.39 in costs, and

---

[3] The IV companies' efforts in Virginia to dismiss Capital One's antitrust counterclaims on a Rule 12(b)(6) motion were successful. The Virginia court dismissed the antitrust counterclaims because Capital One did not allege a relevant market. *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, No. 1:13-CV-00740 AJT, 2013 WL 6682981, at *1 (E.D. Va. Dec. 18, 2013). The legally insufficient market for antitrust purposes consisted "of the '3,500 or more patents that [the IV companies] allege[] cover widely used financial and retail banking services in the United States.'" *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 937 F.3d 1359, 1378 (Fed. Cir. 2019) (discussing *Intell. Ventures I*, 2013 WL 6682981).

granted the request for appellate costs. ECF 722. The IV companies filed a motion to review the Clerk's denial of costs. ECF 723. The issue is fully briefed. ECF 724 & 725. A hearing is not necessary. *See* Loc. R. 105.6. For the following reasons, the Clerk's order is affirmed.

## II.     Standard of Review

Rule 54(d) provides that "[u]less a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Clerk may tax costs, and the Court may review the Clerk's order. *Id.*; *see also* Loc. R. 109.1. The review is *de novo*. *Schwartz v. Rent-A-Wreck*, No. PJM-07-1679, 2016 WL 3906581, at *2 (D. Md. July 14, 2016). In a patent case such as this, "Federal Circuit law governs the determination of which party has prevailed." *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086 (Fed. Cir. 2014).

## III.    Discussion

The IV companies principally argue the Clerk erred by (i) finding there can be only one prevailing party and (ii) finding Capital One was the prevailing party. Each argument is addressed in turn.

### A. There is Only One Prevailing Party

The Clerk determined that there can be only one prevailing party for purposes of awarding costs in patent cases. This determination was based on the seminal Federal Circuit case that set the standard for awarding costs in patent cases with mixed judgments, *Shum v. Intel Corp.*, 629 F.3d 1360 (Fed. Cir. 2010). By "establishing a single definition of prevailing party in the context of patent litigation," the Federal Circuit ensures uniformity in these cases. *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1182 (Fed. Cir. 1996). In *Shum*, the Federal Circuit held unequivocally that "there can only be one prevailing party in a given case . . . ." 629 F.3d at 1367.

Its holding was rooted in the text of the rule—"the prevailing party"—which "unambiguously limits the number of prevailing parties to a given case to one because the operative term, 'prevailing party,' is singular." *Id*. (emphasis removed).  This conclusion was "reinforced by the use of the definite article 'the' before 'prevailing party,'" which proves that Congress intended "prevailing party" to be "specific and limited to a single party." *Id*.  The Court further observed that Rule 54(d) has "no special rule or exception for mixed judgment cases, where both parties have some claims decided in their favor . . . ." Thus, the Court held, "Rule 54 does not allow every party that won on some claims to be deemed a 'prevailing party.'  For the purposes of costs and fees, there can be only one winner.  A court must choose one, and only one, 'prevailing party' to receive any costs award." *Id.*

The IV companies try to distinguish *Shum* from this case.  They argue that *Shum*'s holding is limited to its specific facts, which involved dueling requests for costs by the plaintiff and the defendant, both of which "won on some claims and lost on others." 629 F.3d at 1363.  This case, unlike *Shum*, does not involve dueling claims for costs (Capital One has sought none), and unlike in *Shum*, it involves parties—the IV thirty-party defendants—that won on all claims involving them and lost on none.  Citing these differences, the IV companies urge the Court not to follow *Shum* and instead to follow decisions that have awarded costs to more than one party in multiparty cases.  ECF 723, at 4–5 (citing *Kollsman v. Cohen*, 996 F.2d 702, 706 (4th Cir. 1993); *Jean v. Krauss*, No. 13-CV-6255-FPG, 2015 WL 430116, at *1 (W.D.N.Y. Feb. 2, 2015); *Blanco v. Biscayne Wine Grp., LLC*, No. 10-23988-CIV, 2014 WL 2653922, at *1, *2, *6 (S.D. Fla. June 13, 2014); *Tubbs v. Sacramento Cnty. Jail*, 258 F.R.D. 657, 659 (E.D. Cal. 2009)).  But none of these was a patent case governed by Federal Circuit law, which the Court must follow here.  *B.E.*

7

*Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 677 (Fed. Cir. 2019); *Shum*, 629 F.3d at 1366.[4] And the distinctions that the IV companies identified between this case and *Shum* are not meaningful. *Shum*'s holding that there can be only one prevailing party was based on the text of Rule 54(d), which applies to all cases, not only those involving dueling cost petitions or parties that each won and lost claims. *Shum* applies to all mixed judgment patent cases, including this one.

### B.  Capital One is the Prevailing Party

Having established there can be only one prevailing party, the Court must decide which it is. "To be a 'prevailing party,' . . . the party [must] have received at least some relief on the merits" and "[t]hat relief must [have] materially alter[ed] the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." *Shum*, 629 F.3d at 1367 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–13 (1992)); *SSL Servs.*, 769 F.3d at 1086 (quoting *Shum*). "A party is not required . . . to prevail on all claims in order to qualify as a prevailing party under Rule 54," but "just because a party can be said to have 'prevailed' on a claim does not necessarily make him a 'prevailing party' as the term is used in Rule 54." *Shum*, 629 F.3d at 1367–68 (citing *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1347–48 (Fed. Cir. 2006)).  For a defendant to be a prevailing party, the defendant

---

[4] The Fourth Circuit's holding in *Kollsman v. Cohen*, 996 F.2d 702, 706 (4th Cir. 1993), does not apply here because *Kollsman* was not a patent case, it predates *Shum*, and it is factually distinct. In *Kollsman*, the plaintiff settled his Department of Defense bid-rigging conspiracy claims with the corporate defendants and voluntarily dismissed his claims against a high-ranking member of the Air Force, who was convicted of a crime for related conduct and was given a court-appointed guardian *ad litem* to represent him in the civil action. The question was whether the plaintiff had to pay the costs and fees of the guardian *ad litem*. With limited analysis, the Fourth Circuit held that the plaintiff was the prevailing party as to the corporate defendants but he was not the prevailing party as to the individual defendant. The plaintiff, therefore, had to pay the fees and costs of the guardian *ad litem*. Even if application of the holding in *Kollsman* meant the IV third-party defendants were the prevailing party—and the Court is not convinced it would—the Court nevertheless would exercise its discretion to decline a cost award for the reasons stated later in this opinion.

8

"need not [have] obtain[ed] a favorable judgment on the merits," as the defendant's objective is to avoid a court judgment that materially alters the parties' legal relationship in favor of the plaintiff. *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016); *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1304 (Fed. Cir. 2018) (quoting *CRST*). Therefore, "[t]he defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason." *CRST Van*, 578 U.S. at 431; *Raniere*, 887 F.3d at 1304. Ultimately, the Court's "inquiry . . . focuses on the relief [each party that won a claim] respectively received." *Shum*, 629 F.3d at 1368.

In this case, all parties prevailed on all claims they were defending. Capital One prevailed on all of IV's patent infringement claims, and the IV companies prevailed on all of Capital One's antitrust claims. In each of these victories, the claiming parties were "rebuffed," which "fulfilled [the defending parties'] primary objective." *See CRST*, 578 U.S. at 431. This is enough for any of them to be a prevailing party. *See id.*

To narrow down which is "the prevailing party," the Court compares "the relief [each party] respectively received." *Id.* In defeating IV's patent infringement claims, Capital One obtained a judgment that IV's four patents were invalid and unenforceable. This allowed Capital One to continue its business practices without having to pay a licensing fee to IV for banking practices relating to the four patents. Capital One's victory has preclusive effect as to the four patents, and it "materially alter[ed] the legal relationship" between Capital One and IV. *See Shum*, 629 F.3d at 1367. The IV companies may no longer demand licensing fees from Capital One based on these four patents. This outcome significantly modifies the IV companies' behavior in way that directly benefits Capital One.

By contrast, the judgment that the IV companies obtained against Capital One did not materially alter their relationship with the bank. Their victory on Capital One's antitrust claims

9

was limited in scope. The Federal Circuit affirmed the Court's judgment that Capital One was precluded from bringing antitrust claims based on the Virginia court's prior finding that the alleged relevant market was legally insufficient to state an antitrust claim. *Intell. Ventures I*, 937 F.3d at 1378. This does not mean the IV companies, by virtue of their win, have foreclosed future lawsuits against them by Capital One. As the Virginia court observed, it could "be imagined that, at some point, were IV to engage in the kind of endless, unsuccessful litigation described by Capital One, IV would incur legal liability," and although "the antitrust laws appear ill suited as a remedy for what Capital One fears," Capital One could challenge IV's conduct "through various doctrines of tort liability, statutory fees or judicial sanctions." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, No. 1:13-CV-00740 AJT, 2013 WL 6682981, at *8 (E.D. Va. Dec. 18, 2013). Thus, Capital One is not clearly precluded from bringing claims against the IV companies for attempting to enforce invalid patents. IV's legal relationship with the bank was not materially altered by its victory on the antitrust claims.

The IV companies argue that they are the prevailing parties because the time and expense to litigate the antitrust claims, which they won, far exceeded the time and expense to litigate the patent claims, which Capital One won. While it may be true that the antitrust claims were more expensive and resource-intensive to litigate than the patent claims, this case was, at its core, a patent lawsuit instigated by IV to enforce patents in its patent portfolio against Capital One. The antitrust claims came in response to the patent claims as part of Capital One's two-pronged defense: (i) it attacked the invalidity of the patents, which was successful, and (ii) it filed antitrust claims to prevent the IV companies from pursuing these patent claims against them, which was unsuccessful. The antitrust claims were but another way to challenge the enforceability of the IV companies' patents. If IV had not initiated patent infringement actions against Capital One,

Capital One would not have had a basis for its counterclaims. This case was essentially a patent case, which Capital One won.

The IV companies insist it would defy common sense to deny costs to the IV third-party defendants which, unlike Capital One, prevailed on all claims and lost on none. But just because the IV third-party defendants defeated every claim asserted against them does not "necessarily make [them] a 'prevailing party.'" *Shum*, 629 F.3d at 1367–68; *Kemin Foods*, 464 F.3d at 1347–48. The Court must consider which party's victory was more successful. On that front, while the IV third-party defendants were undefeated and Capital One lost some claims, the former's complete victory did not materially alter its legal relationship with the latter. Capital One obtained a resounding and legally significant victory on the patent claims asserted by IV, which cannot be overshadowed by the IV third-party defendants' complete success on the claims against them.

### C. Cost Award to Any of the IV Companies Would be Inequitable

Even if the IV companies, or some subset of them, were the prevailing party, the Court would exercise its discretion to deny costs, notwithstanding the "presumption in favor of an award of costs to the prevailing party." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 636 (4th Cir. 2010) (citing *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994)); *Shum*, 629 F.3d at 1367 ("[E]ven if a party satisfies [the] prevailing party test, the trial court 'retains broad discretion as to how much to award, *if anything.*'") (quoting *Manildra*, 76 F.3d at 1183 (emphasis added in *Shum*); citing *Farrar*, 506 U.S. at 115)). "Costs may be denied to the prevailing party only when there would be an element of injustice in a presumptive cost award." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999) (quoting *Teague*, 35 F.3d at 996). If the Court decides not to award costs, it must "articulat[e] some good reason" to "justify its decision[.]" *Id.* (citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 355 n.14 (1981)). The Court may deny costs to penalize

the prevailing party for misconduct. *Id.* Other reasons include if the issues were close and difficult to decide, if the losing party cannot pay, if the costs are excessive, and if the prevailing party's success has little value. *Id.*; *see also Teague*, 35 F.3d at 996.

Here, there would be an element of injustice in awarding costs to the IV companies. Capital One prevailed on the four patent claims that IV pursued, and the catalyst for Capital One's antitrust claims was the IV companies' repeated patent litigation against it and other banks. Although Capital One lost on the claims that were most expensive to litigate, it, too, incurred significant costs, and IV, as the instigator, should not benefit from a non-merits victory that does not necessarily prevent future claims based on its attempted patent enforcement. This unjust result could not be avoided if the Court were to award costs only to the wholly successful IV third-party defendants, because they and IV are represented by the same counsel, share the same CEO and office space, and function as different parts of the same operation. One of the IV plaintiffs and two of the IV third-party defendants are legal entities without employees, and the other third-party defendant manages the employee-less plaintiff, which functions as the holder of the patents the IV companies seek to enforce. ECF 228, ¶¶ 11, 13; ECF 436, ¶¶ 11, 13; ECF 439, ¶¶ 12, 13; ECF 446, ¶¶ 12, 13; *see Xilinx, Inc. v. Invention Inv. Fund I LP*, No. C 11-0671 SI, 2011 WL 3206686, at *1 (N.D. Cal. July 27, 2011) (noting the IV companies share a principal place of business). It would be blatantly unfair to award costs to the IV third-party defendants when the award obviously would benefit all the IV companies.

In addition to an award of costs being unjust, the closeness and difficulty of the issues decided counsels against awarding costs. The antitrust claims withstood the IV companies' opposition to Capital One's motion for leave to amend to add counterclaims and the IV companies' motions to dismiss. It was not until the conclusion of extensive discovery that the Court granted

summary judgment to the IV companies. As for the patent claims, they, too, were litigated intensely, and the issues were close and difficult enough that the Court and Special Master reached different outcomes, with the Special Master recommending judgment in favor of IV on two of its four patent claims. This was a long, expensive, hard-fought war with difficult and close issues decided for and against both sides. Therefore, an award of costs to the IV companies, if they were the prevailing party, would be denied as unjust. *See Shum*, 629 F.3d at 1367; *Miller v. Asensio & Co.*, 364 F.3d 223, 235 n.10 (4th Cir. 2004) (concluding district court "did not abuse its discretion by declining to award costs" where "the case 'was a close and difficult one' with small recovery that amounted to victory 'in name only'"); *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 592 n.4 (M.D.N.C. 2009) (noting "the size and scope of the litigation" and concluding that "each side should bear its own costs" where "both sides prevailed as to certain claims in this case, with neither side obtaining a more substantial win than the other").

## IV.     Conclusion

The Clerk's order taxing costs, ECF 722, is affirmed. The plaintiffs and the third-party defendants' joint request for $289,006.39 in costs incurred in the district court is denied. The Clerk will award appellate costs in the amount of $266.33.

Dated: March 29, 2023

Deborah L. Boardman
United States District Judge